# AMERICAN IRON AND STEEL MANUFACTUR-
## ING CO. *v.* SEABOARD AIR LINE RAILWAY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR
THE FOURTH CIRCUIT.

No. 233. Argued March 6, 1914.—Decided April 6, 1914.

Whatever may have been the English and early American rule, the present tendency in this country is to allow interest on contracts to pay money from the date the debt becomes due; and so *held* as to goods sold in Virginia on a credit of thirty days.

The acceptance of goods sold on a credit of a specified number of days is equivalent to a promise to pay the money on that day, *Atlantic Phosphate Co.* v. *Grafflin*, 114 U. S. 492, and interest accrues as an incident of the debt and not merely as damages.

The general rule that interest is not allowed after property of the insolvent is in *custodia legis*, is not based on loss of interest-bearing quality, but is a necessary and enforced rule incident to equality of distribution between creditors of assets which, in most cases, are insufficient to pay all debts in full.

On the facts certified in this case, *held* that interest was recoverable on a debt for goods sold on a thirty day credit at the legal rate of interest from the expiration of the credit until payment, including the period that the assets of the debtor were in the hands of a receiver in a suit to foreclose a mortgage.

UNDER the provisions of § 6 of the act of March 3, 1891, c. 517, 26 Stat. 826, 828, the Circuit Court of Appeals of the Fourth Circuit certified to this court a question on which it desired instruction, and in that connection made the following Statement of Facts:

"Upon a bill filed by a railway company alleging its insolvency and consequent inability to maintain itself as a going concern, except through the medium of a receivership, receivers were appointed. The bill alleged that a receivership would enable the property of the Railway Company to be preserved and maintained as a whole,

and the sums due and to become due to the bondholders and creditors to be secured and ultimately paid in full.

"The trustee in the first mortgage answered the bill admitting its allegations, and afterwards filed a cross bill again admitting the allegations of the bill in regard to the insolvency of the company. The suit was not a creditors' suit. The trustee subsequently filed a bill in the same court to foreclose the mortgage, seeking a sale of the equity of redemption, and the two suits were consolidated. No prior encumbrancers were made parties to either suit. Prior to the receivership the claimant furnished supplies to the railway company, for which, shortly after the receivers were appointed, a lien was duly perfected under the statute of Virginia known as the Labor and Supply Lien Statute, Code of Va., § 2485. The supplies were sold on a credit of '30 days, one per cent. discount allowed for payment in 10 days.' Claimant filed its claim before the Special Master in the receivership proceedings, relying upon a statutory lien under the statute above mentioned. The Special Master reported against the allowance of interest on the claim; to which report in that particular claimant excepted.

"Subsequently, on the petition of the railway company, a decree was entered approving 'a plan of adjustment' of the finances of the company, and providing for turning back to the company its property, and for ending the receivership at a certain time. From time to time during the receivership and at the ratification of the plan of adjustment, and as a part thereof, all interest due at the time of the appointment of the receivers and accruing during the receivership on all the funded and many of the floating obligations of the Railway Company were paid in full. The amount so paid for interest aggregated some millions of dollars.

"The decree approving the plan of adjustment provided that the company should pay in due course of business all

its obligations, liabilities and indebtedness, and reserved the right, in the event of default in that regard, to any claimant aggrieved by such default, to present his petition to the Court to have his claim enforced 'to the same extent as though the receivership had continued.'

"After the receivership had been thus terminated, claimant filed its petition in the Court praying that its exceptions to the Special Master's report should be sustained and for the enforcement of its claims, including interest thereon during the period of the receivership, and seeking to enforce it not upon the doctrine of an equitable lien, but as a statutory lien. The Circuit Court refused to allow interest for the period of the receivership, and from that ruling an appeal was taken."

## QUESTION

Is interest recoverable on such a claim for the period of the receivership?

*Mr. George Wayne Anderson*, with whom *Mr. Henry R. Pollard* was on the brief, for the American Iron and Steel Manufacturing Co.

*Mr. L. L. Lewis* for the Seaboard Air Line Railway *et al.*

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The statement of facts made by the Circuit Court of Appeals of the Fourth Circuit, shows that supplies were sold to a railway company on 30 days' credit. Before the credit period expired the road, alleged to be insolvent, was, on its own application placed in the hands of Receivers, their appointment being subsequently continued under a Bill for foreclosure filed by mortgage trustees. The

Railway Company succeeded in making a readjustment of its bonded indebtedness and the property was returned to the owners. The court, however, retained jurisdiction for the purpose of passing upon the claims of creditors aggrieved by the Company's default in paying its obligations. Among those presented was the American Iron and Steel Manufacturing Company's claim for supplies secured by a lien which by statute took priority over mortgages. The matter was referred to a Master on pleadings not before us. He made a report (not in the record) and on exceptions thereto the Circuit Court refused to allow interest. From that statement, in connection with the briefs and arguments, of both counsel, we infer that the Railway was directed to pay the principal of the claim. The case was then taken to the Circuit Court of Appeals for the Fourth Circuit which certifies to this court the question, "Is interest recoverable on such a claim for the period of the Receivership?"

Both parties agree that the matter is controlled by the law in Virginia, but no light is thrown on the subject by the statute of the State which merely declares that legal interest shall continue to be at the rate of six per cent. Pollard's Code, § 2817. No Virginia case directly in point is cited in either of the briefs and there is a complete disagreement between counsel as to the bearing of the state decisions on the question here involved.

On the part of the Railway Company it is contended that interest could not have been recovered on this claim even in an action at law. On the authority of *Calton* v. *Bragg*, 15 East, 223; *Newton* v. *Wilson*, 3 Hen. & M. 470; *Quincy* v. *Humphreys*, 145 U. S. 82, and other like cases, it is argued that the right to interest is a matter of agreement and can be recovered, as a part of the debt, only where it has been reserved in the contract or where a promise is implied from the character of the note or instrument evidencing the debt. The Railway therefore

insists that as the Intervenor sold the supplies, without taking a note and without securing a promise to pay interest, there was no right to recover interest as an incident of the debt, although a jury, as a matter of discretion, might have allowed it by way of damages for unreasonable delay in making payment.

On the other hand, counsel for the Iron & Steel Company contend that as these supplies were sold on a credit of 30 days a promise was implied to pay interest after that date as an incident of the debt itself. From *Chapman* v. *Shepherd*, 24 Gratt. 377, 383; *Craufurd* v. *Smith*, 93 Virginia, 623 (2); *Tidball* v. *Shenandoah Bank*, 100 Virginia, 741; *Butler Co.* v. *Virginia Railway Co.*, 113 Virginia, 28 (7); *Roberts* v. *Cocke*, 28 Gratt. 207, and *Cooper* v. *Coates*, 21 Wall. 105, 111, we reach the conclusion that whatever may have been the English and early American rule, the tendency in Virginia, as elsewhere in this country, is to allow interest on contracts to pay money from the date that the debt becomes due. 2 Minor's Institute, 381. The sale here of supplies on 30 days' credit was not, as argued, a mere agreement for the benefit of the buyer that it should not be sued before the expiration of that time, but was the fixing of a definite date for payment of the purchase money. The acceptance of the supplies, sold on those terms, was equivalent to a promise to pay the money on that day. *Atlantic Phosphate Co.* v. *Grafflin*, 114 U. S. 492, 500. As payment was not then made, the Railway Company was in default and interest began to accrue as an incident of the debt, recoverable as such and not merely as damages to be allowed in the discretion of court or jury. This appears to have been the view of the Circuit Court of Appeals since the interest-bearing quality of the debt seems to be assumed in the question—"Is interest recoverable on such a claim for the period of the Receivership?"

In the discussion as to the answer which should be

given that question, the Railway Company insists that, whether treated as part of the debt or allowed as damages, interest can only be charged against the Railway because of delay due to its own fault, while here the failure to pay was due to the act of the law in taking its property into custody and operating the same by Receivers in order to prevent the disruption of a great public utility. And it is true, as held in *Tredegar Co.* v. *Seaboard Ry.*, 183 Fed. Rep. 289, 290, that as a general rule, after property of an insolvent is in *custodia legis* interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest, from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt. But that rule did not prevent the running of interest during the Receivership; and if as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid. Even in bankruptcy, and in the face of the argument that the debtor's liability on the debt and its incidents terminated at the date of adjudication and as a fixed liability

was transferred to the fund, it has been held, in the rare instances where the assets ultimately proved sufficient for the purpose, that creditors were entitled to interest accruing after adjudication. 2 Blackstone's Comm. 488; Cf. *Johnson* v. *Norris*, 190 Fed. Rep. 459, 460 (5).

The principle is not limited to cases of technical bankruptcy, where the assets ultimately prove sufficient to pay all debts in full but principal as well as interest, accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full. *Central Co.* v. *Condon*, 67 Fed. Rep. 84; *Richmond &c. Co. . Richmond R. Co.*, 68 Fed. Rep. 105, 116; *First National Bank* v. *Ewing*, 103 Fed. Rep. 168, 190.

The Railway Company relies on the statement in *Thomas* v. *Western Car Co.*, 149 U. S. 95, 116, that "as a general rule, after property of an insolvent passes into the hands of a receiver, interest is not allowed on claims against the funds." The court there refused to allow interest on car rentals, accruing during the receivership, under an old contract, because the funds were not sufficient to pay the bonds, saying (117): "We see no reason in departing from this [general] rule in a case like the present, where such a claim [for car rentals] would be paid out of moneys that fall far short of paying the mortgage debt." But here, interest was paid on mortgage bonds and should therefore have been paid on a claim which by statute was given priority over the bonds. This was specially true where the property was in the hands of a Receiver on the application of the debtor and of the mortgage trustees. For, manifestly, the law does not contemplate that either the debtor or the trustees can, by securing the appointment of Receiver, stop the running of interest on claims of the highest dignity.

In the brief for the Railway Company attention is called to the fact that the road was not in *custodia legis*

under a creditors' suit, but in a proceeding to foreclose the equity of redemption. In view of that fact it is argued that the Iron and Steel Company should be remitted to its action at law against the Company which is now in possession of the property. But this seems to involve matters not within the question certified by the Circuit Court of Appeals. The property was returned to the Railway Company on condition that any creditor aggrieved by the failure to pay his claim might present his petition to the court and have it enforced "to the same extent as though the receivership had continued." As a fact interest was paid on the floating indebtedness, out of earnings made by the Receivers appointed first under a bill which asked that the property be taken in charge by the court so that ultimately all creditors would be paid in full. We must assume that the court had the right to make these payments and if so it had a like right in the case of the claim for railway supplies. No question is raised as to the power of the court to require payment of the principal of appellant's debt, and if the court could require a payment of the principal, it could also enforce the payment of the interest which was but an incident of that debt. If the property had remained in the hands of the Receiver the Lienor might have been permitted to intervene and share in the fund realized by the sale of property in the hands of receivers appointed, first, on the application of the Railway, in the interest of all creditors, and continued by an order entered in the bill to foreclose the mortgage.

It is, however, not necessary to discuss that matter further than to say that on the facts stated, interest was recoverable on the American Iron and Steel Company's claim for the period of receivership.

*The question certified by the Circuit Court of Appeals is answered in the affirmative.*