## GAMBLE v. WIMBERLY.
### No. 2984.

Circuit Court of Appeals, Fourth Circuit.
Oct. 21, 1930.

George Rountree and H. Edmund Rodgers, both of Wilmington, N. C. (Rodgers & Rodgers and Rountree & Carr, all of Wilmington, N. C., on the brief), for appellant.

Kemp D. Battle, of Rocky Mount, N. C. (Battle & Winslow, of Rocky Mount, N. C., on the brief), for appellee.

Before NORTHCOTT, Circuit Judge, and BAKER and WILLIAM C. COLEMAN, District Judges.

WILLIAM C. COLEMAN, District Judge.

This is an appeal from a decision of the District Court for the Eastern District of North Carolina, at Wilmington, in equity, in favor of the appellee, the plaintiff below, and arises out of a controversy between two national banks as to the amount which the receiver of the one, who was the defendant below and now the appellant, should be required to pay as liquidating dividends to the trustee representing the other bank, who was the plaintiff below and is the appellee here.

For convenience, appellant will be hereinafter referred to as the receiver, and appellee as the trustee. The following material facts are not disputed. On December 29, 1929, the Commercial National Bank of Wilmington, N. C., failed, owing the First National Bank of Rocky Mount, N. C., $28,402.90, consisting of (1) $25,000 due on a note, to secure which the Commercial National Bank pledged certain securities; and (2) $3,402.90, being the sum then on deposit by the Rocky Mount bank with the Wilmington bank. Incident to a merger of the Rocky Mount bank with another bank, the trustee was appointed to take charge of certain of its assets, among which were the above-mentioned indebtednesses; and he filed on behalf of the Rocky Mount bank, and was allowed, a claim on the assets of the Wilmington bank for the aforementioned total sum, and, in due course, the receiver appointed on behalf of the Wilmington bank paid to creditors, including the trustee, two dividends aggregating 15 per cent., which resulted in the trustee being paid the sum of $4,260.44. Prior to such payments, namely, on October 26, 1929, the trustee had collected the sum of $23,331.30 on the collateral pledged, as above explained, with the Rocky Mount bank by the Wilmington bank. These collections the trustee applied first to liquidation of interest which had accrued on his claim since the date of insolvency of the Wilmington bank, amounting to $2,372.89, and, as the time for the payment of a third dividend by the receiver approached, the trustee claimed the right to participate therein, upon the basis of the principal amount of his claim remaining due after crediting to the principal that part of the collateral collections which remained after liquidation of interest as aforesaid, whereas the receiver contended that the dividends previously received by the trustee and the collections from collateral should first have been applied to the reduction of the principal, not the interest, of the claim. Under the trustee's theory, there remains due him the sum of $3,184.05, whereas, on the receiver's theory, the trustee would only be entitled to $811.16. The District Judge en-

tered a decree sustaining the trustee's contention, and directed the receiver to pay to the trustee subsequent dividends, as and when paid to other creditors, based upon the original face of the trustee's claim, namely, $28,402.90, the aggregate of such future dividends not to exceed the sum of $3,184.05. It is from this decree that this appeal is taken.

Summarized, the question presented for our decision is whether a creditor of an insolvent national bank may be permitted to apply collections from collateral security which he holds to the liquidation of interest accruing upon his claim subsequent to the bank's insolvency, before applying such collections to the reduction of the principal of his claim.

The National Banking Act requires the Comptroller to apply ratably all funds remitted to him by the receiver of an insolvent national bank "on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds * * * are paid over to him, shall make further dividends on all claims previously proved or adjudicated. * * *" 12 USCA § 194. But beyond this, there is no statutory provision affecting the precise question here involved.

As a general rule, when property comes into custodia legis, interest thereafter accruing is not allowed on unsecured debts payable out of the liquidated assets, not however because the claims lose their interest bearing quality during that period, but because equable distribution requires such a rule, due to the fact that, in case of receiverships, assets are usually insufficient to pay debts in full. But if the estate does prove sufficient to discharge the claims in full, interest, as well as principal, will be paid, and in such event dividend payments are made applicable first to interest, then to principal. American Iron Co. v. Seaboard Air Line, 233 U. S. 263, 266, 34 S. Ct. 502, 58 L. Ed. 949; Story v. Livingston, 13 Pet. 359, 10 L. Ed. 200; Ohio Savings & Trust Co. v. Willys (C. C. A.) 8 F.(2d) 463, 44 A. L. R. 1162, and cases therein cited. Similarly, interest will be allowed on secured debts if in conformity with the agreement under which security was taken. Richmond & I. Construction Co. v. Richmond N. I. & B. R. Co. (C. C. A.) 68 F. 105, 34 L. R. A. 625; see also Washington-Alaska Bank v. Dexter Horton National Bank (C. C. A.) 263 F. 304.

However, we are concerned here, not with the winding up of a private corporation, but with a national bank; and it has long been settled that the national banking laws, part of which have been above quoted, govern any distribution of the assets of an insolvent national bank, and that its provisions are not to be departed from, anything in the bankruptcy law to the contrary notwithstanding. Cook County National Bank v. United States, 107 U. S. 445, 2 S. Ct. 561, 27 L. Ed. 537. So treating the national banking laws, the Supreme Court, in 1898, decided that, on the failure of a national bank, a creditor thereof, whose debt is secured by pledge of collateral, is entitled to be recognized and classed by the Comptroller of the Currency to the full amount of his debt without in any way taking into account such collateral, and on the amount so recognized he is entitled to be paid out of the general assets of the bank any dividends which may be declared; and, further, that this right to be so classed to the full amount of his debt, without regard to the value of the collateral, is fixed by the date of the insolvency and continues to the final distribution, regardless of change in the debt thereafter brought about by realization from the collateral, provided only that the sums received by the creditor by way of dividends and from collateral do not exceed the entire debt. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640. See, also, Aldrich v. Chemical National Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. Ed. 611. In bankruptcy, however, by virtue of the express provision of the Bankruptcy Act, § 57h (11 USCA § 93(h), the value of securities held by secured creditors must first be credited upon their claims and dividends paid only upon the balance, and, as a corollary of this requirement, the Supreme Court has determined that, in bankruptcy, secured creditors, like unsecured creditors, are not entitled to interest accruing on their claims subsequent to filing of the petition for adjudication, and that therefore they cannot apply to such interest proceeds from collateral, but must first apply them to liquidation of their claims with interest only to the date of the petition. Sexton v. Dreyfus, 219 U. S. 339, 31 S. Ct. 256, 55 L. Ed. 244.

In the Merrill Case, the court said (pages 141, 146, 147 of 173 U. S., 19 S. Ct. 360, 364):

"In short, the secured creditor is not to be cut off from his right in the common fund

because he has taken security which his co-creditors have not. Of course, he cannot go beyond payment, and surplus assets or so much of his dividends as are unnecessary to pay him must be applied to the benefit of the other creditors; and, while the unsecured creditors are entitled to be substituted as far as possible to the rights of secured creditors, the latter are entitled to retain their securities until the indebtedness due them is extinguished. * * *

"We repeat that it appears to us that the secured creditor is a creditor to the full amount due him when the insolvency is declared, just as much as the unsecured creditor is, and cannot be subjected to a different rule. And, as the basis on which all creditors are to draw dividends is the amount of their claims at the time of the declaration of insolvency, it necessarily results, for the purpose of fixing that basis, that it is immaterial what collateral any particular creditor may have. The secured creditor cannot be charged with the estimated value of the collateral, or be compelled to exhaust it before enforcing his direct remedies against the debtor, or to surrender it as a condition thereto, though the receiver may redeem or be subrogated as circumstances may require. * * *

"Our conclusion is that the claims of creditors are to be determined as of the date of the declaration of insolvency, irrespective of the question whether particular creditors have security or not. When secured creditors have received payment in full, their right to dividends and their right to retain their securities cease, but collections therefrom are not otherwise material. Insolvency gives unsecured creditors no greater rights than they had before, though, through redemption or subrogation or the realization of a surplus, they may be benefited."

It is to be noted that, in the Merrill Case, the Comptroller of the Currency required the creditor to exhaust his collateral and then prove for the balance due, after applying the proceeds of the collateral in part payment. This the Supreme Court held he was not required to do. The only difference is that in the present case the trustee has seen fit voluntarily to liquidate all of the collateral, but this distinction is immaterial in so far as the application of the rule laid down in the Merrill Case is concerned. That case was not, however, concerned with the question of interest, nor has any case come to our attention which has passed upon this precise point. See Nolte v. Hudson Navigation Co.

(C. C. A.) 31 F.(2d) 527. So we are called upon to answer as an original question whether the doctrine of the Merrill Case must be construed to permit the trustee to do what he has here done, namely, apply collections from collateral to the liquidation of interest accruing on his claim subsequent to the insolvency, before applying such collections to the reduction of the principal of his claim. In other words, when, if at all, is the trustee entitled to such interest on his claim?

Fifteen years before the decision in the Merrill Case, it was said in White v. Knox, 111 U. S. 784, 4 S. Ct. 686, 28 L. Ed. 603, and repeatedly affirmed, that the value of the claim at the time of the declaration of insolvency is to be taken as the basis of distribution, and interest is to be allowed only up to that time, except in cases where such allowance may be necessary to put a given creditor on an equality with other creditors, Armstrong v. American Exchange Bank, 133 U. S. 433, 10 S. Ct. 450, 33 L. Ed. 747, unless, of course, a surplus results. As was said in the Merrill Case, supra (page 146 of 173 U. S., 19 S. Ct. 360, 364): "It is because of the distinction between the right in personam and the right in rem that interest is only added up to the date of insolvency, although, after the claims as allowed are paid in full, interest accruing may then be paid before distribution to stockholders." See, also, National Bank of Commonwealth v. Mechanics' National Bank, 94 U. S. 437, 24 L. Ed. 176; Chemical National Bank v. Armstrong (C. C. A.) 59 F. 372, 28 L. R. A. 231. The receiver contends that the effect of the decisions just cited is that a creditor cannot, by judgment of a competent court, create an interest debt against an insolvent national bank after suspension and receive dividends thereon, and that, since this cannot be done, the creditor cannot accomplish the same thing by a voluntary application of collections from collateral to subsequently accrued interest, because that has the same result, namely, it enlarges the creditor's claim over and above what it was on the date of suspension.

█ Fundamentally, this contention of the receiver is sound, and we say this in full recognition of the distinction heretofore discussed between the rule which governs in bankruptcy and that with respect to the insolvency of national banks, in so far as the initial rights of creditors with collateral security are concerned. In deciding that a secured creditor may prove against the general assets of the debtor for the full amount of his claim, regardless of the value of his security,

without deducting any sums collected therefrom after the date of the receivership, the Supreme Court stated the rule in the following language: "The creditor can prove for, and receive dividends upon, the full amount of his claim, regardless of any sums received from his collateral after the transfer of the assets from the debtor in insolvency, *provided that he shall not receive more than the full amount due him.*" At the close of the opinion in the paragraph already quoted, the Supreme Court stated that *"When secured creditors have received payment in full, their right to dividends and their rights to retain their securities cease,* but collections therefrom are not otherwise material." (Italics inserted.) So, whether the trustee is entitled to interest depends upon what the Supreme Court intended shall constitute the "full amount" of the claim. Was this intended to include interest subsequent to the date of the insolvency when, as we have seen from the explicit language of the Supreme Court, the liability in so far as the assets in the hands of the receiver are concerned is made fixed and absolute? We believe that there is but one conclusion to be adopted from this language, and that is that such interest is not allowed unless and until all creditors have been paid the full amount of their claims with interest to the date of insolvency. If there should then remain a surplus in the hands of the receiver, he may, and should, distribute the same equally among all creditors to the extent that it will cover interest due them.

■ Upon a careful reading of the Supreme Court's decision in Sexton v. Dreyfus, supra, it will be seen that the reasoning in that case inevitably leads us to the present conclusion. That decision, like the decision in the Merrill Case, is twofold: first, that interest on secured, as well as unsecured debts, stops at the date of the filing of the petition in bankruptcy, and, second, that the proceeds from collateral held by a secured creditor must be applied to the liquidation of the debt with interest to the date of the petition only, and cannot be applied to interest accruing since that time. It is to be noted that the basis for the court's conclusion in the Sexton Case is, as stated on page 345 of 219 U. S., 31 S. Ct. 256, 257, that, at the moment of the filing of the petition in bankruptcy, "the creditors acquire a right in rem against the assets." In support of this proposition, the Merrill Case is cited, and, at the close of the court's opinion, Justice Holmes says that "the view that we adopt * * * is some-

what sustained by analogy in the case of insolvent banks," and again cites the Merrill Case, as well as White v. Knox, supra.

■ There is one further point which remains to be disposed of, because possibly presented by the record in the present case, although the record is not clear on this point. We refer to the question whether, assuming that interest and dividends accrued upon some of the collateral since the date of the debtor bank's insolvency, such interest and dividends are to be excepted from the rule here laid down, and may be retained by the trustee. Such an exception was made in the Sexton Case, the court relying upon the English rule (page 346 of 219 U. S., 31 S. Ct. 256), and we believe that a similar exception is proper in the present case, because, if granted a creditor under his more restricted rights under the Bankruptcy Act, a fortiori he would seem to be entitled to as much in the present situation.

In view of the conclusion which we reach, it becomes unnecessary to analyze the various English cases to which we have been referred, or to say more respecting them than that, while favorable to the receiver's contention, they are not to be taken as conclusive of the question in controversy for the primary reason, among others, that they deal with the winding up of private corporations, the procedure in which in England is controlled by the British Judicature Act of 1875, which expressly provides that the rights of secured and unsecured creditors in such proceedings shall be governed by the British Bankruptcy Law.

Summarizing our conclusions, we find that, whereas the judgment of the lower court was correct in so far as it required the receiver to pay dividends ratably to the trustee based upon the latter's original claim, it was, nevertheless, in error in permitting the trustee to apply collections from collateral to the liquidation of interest, as the trustee did, and thereby to increase the amount, still unpaid, of his original claim by the amount of interest so liquidated. Although not required to do so, the trustee having in fact sold the collateral, and the total of all dividends paid and anticipated being much less than the full amount of his claim, he should apply in further liquidation thereof, not merely the balance of the proceeds realized from the collateral (as he has voluntarily done), but the total amount of such proceeds, less only any interest and dividends that may have accrued upon the collateral itself since the date of the Wilmington bank's insolvency.

334

Accordingly, the case must be remanded in order that the judgment may be modified in conformity with this opinion.

Modified and remanded.