**BOARD OF COM'RS OF SWEETWATER COUNTY, WYO., et al. v. BERNARDIN et al.**

**GREEN RIVER WATER WORKS CO., et al. v. SAME.**

**Nos. 1090, 1091.**

Circuit Court of Appeals, Tenth Circuit.
Dec. 31, 1934.

In case No. 1090:

Mahlon E. Wilson, of Salt Lake City, Utah (Walter A. Muir and Joseph H. Galicich, both of Rock Springs, Wyo., and Robert C. Wilson, of Salt Lake City, Utah, on the brief), for appellants.

Wm. E. Mullen, of Cheyenne, Wyo., and John W. Kearns, of Chicago, Ill. (Clarence A. Swainson, of Cheyenne, Wyo., Bruce Johnstone, of Chicago, Ill., and Massey Holmes and John J. Henry, both of Kansas City, Mo., on the brief), for appellees.

In case No. 1091:

John U. Loomis, of Cheyenne, Wyo., for appellants.

Clarence A. Swainson, of Cheyenne, Wyo. (Bruce Johnstone and John W. Kearns, both of Chicago, Ill., Massey Holmes, of Kansas City, Mo., Wm. E. Mullen, of Cheyenne, Wyo., and John J. Henry,

of Kansas City, Mo., on the brief), for appellees.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

PHILLIPS, Circuit Judge.

No. 1090.

Bernardin was appointed receiver for the Central Coal & Coke Company by the District Court of the United States for the Western District of Missouri in an original proceeding commenced in that court. On January 27, 1931, an ancillary proceeding was instituted in the District Court of the United States for the District of Wyoming, and on February 2, 1931, Bernardin was appointed ancillary receiver for the properties of the Central Company located in that state. On May 8, 1931, the trustees under a first mortgage deed of trust dated June 1, 1922, and a supplementary mortgage dated March 1, 1924, upon the properties of the Central Company, given to secure a bond issue aggregating $2,076,200, filed a bill in equity to foreclose such mortgages. By consent of the parties the proceedings were consolidated and it was stipulated that Bernardin, as general receiver, should take charge of, conserve, and operate the properties for the benefit of the trustees and the general creditors.

Appropriate orders were made by the trial court permitting Bernardin to continue the business of the Central Company in Wyoming, which was primarily the production and sale of coal. The principal properties of the Central Company are located in Sweetwater county, Wyoming, and consist of coal lands and improvements thereon, personal property used in the operation of the mines, and coal produced therefrom. It also has under lease certain other coal properties which have improvements thereon.

In June, 1932, the county commissioners and county treasurer of Sweetwater county (hereinafter called claimants) filed a claim in the receivership proceedings for taxes levied against the Central Company for 1930 and 1931. Objections to the claim were filed by the trustees and receiver. Neither they nor the claimants sought a hearing. In March, 1933, another claim was filed by the claimants covering the taxes for 1930, 1931, and 1932. Objections were filed by the trustees and the receiver, and a hearing was had. The following is a statement of the taxes for which claim was made:

Lands:

| | | |
|---|---|---|
| Taxes assessed in 1930 | $ | 18.47 |
| " " " 1931 | | 21.40 |
| " " " 1932 | | 14.93 |
| Total | $ | 54.80 |

Improvements on Lands

| | | |
|---|---|---|
| Taxes assessed in 1930 | $ | 1,040.80 |
| " " " 1931 | | 1,146.36 |
| " " " 1932 | | 1,037.32 |
| Total | $ | 3,224.48 |

Personal Property:

| | | |
|---|---|---|
| Taxes assessed in 1930 | $ | 102.12 |
| " " " 1931 | | 104.80 |
| " " " 1932 | | 94.83 |
| Total | $ | 301.75 |

Gross Product (Coal):

| | | |
|---|---|---|
| Taxes assessed in 1930 | $ | 12,339.79 |
| " " " 1931 | | 12,257.71 |
| " " " 1932 | | 8,019.97 |
| Total | $ | 32,617.47 |

Interest and Penalties:

| | | |
|---|---|---|
| Interest on delinquent taxes on lands, improvements and personality for 1930.. | $ | 329.26 |
| Interest on delinquent taxes on production for 1930 | | 3,496.33 |
| Interest on delinquent taxes on lands, improvements and personal property for 1931 | | 169.60 |
| Interest on delinquent taxes on production for 1931 | | 1,634.41 |
| Total | $ | 5,629.60 |

Gross product taxes are assessed each year based upon the coal produced during the preceding year.

The trial court held that the taxes assessed against the lands and improvements were a first lien on Central Company's properties and superior to the lien of the first mortgage; that such taxes and the gross product tax assessed in 1932 on coal produced in 1931 during the receivership, aggregating $11,299.25, should be paid forthwith by the receiver out of income of the properties in Wyoming, "inferior only to the costs of administration to be fixed by the court"; that the taxes assessed on the personal property, and the gross product tax assessed in 1930 and 1931 on coal produced in 1929 and 1930 before the receivership, aggregating $24,899.25, were valid claims against the receivership inferior to the lien of the first mortgage, and that they should be paid prior to any distribution to unsecured creditors out of any funds, monies, or properties not subject to the lien of the first mortgage; and that the claims for interest and penalties should be disallowed.

A decree was entered accordingly. Claimants have appealed. Section 115-2303, Wyo. Rev. St. 1931, in part provides:

"On the tenth day of November and the tenth day of May of each year, all unpaid taxes which are due and payable, according to the provisions of section 115-2301 shall become delinquent and draw interest at the rate of fifteen per centum per annum until paid or collected by distress or sale, and taxes upon real estate are hereby made a perpetual lien thereon against all persons or corporations, except the United States and this state, and taxes due from any person or corporation on personal property shall be a lien on real estate owned by such person or corporation, subject, however, to all prior existing valid liens."

By virtue of the above section, taxes on real estate become a first lien against such real estate, and taxes on personalty become a lien against real estate subject to prior encumbrances. See also Lobban v. State ex rel. Carpenter, 9 Wyo. 377, 64 P. 82; Ricketts v. Crewdson, 13 Wyo. 284, 79 P. 1042, 81 P. 1; Wakeman v. Board of Com'rs, 40 Wyo. 53, 274 P. 12.

The receiver and trustees contend that the gross product taxes assessed against the Central Company during 1930 and 1931, are taxes on the coal produced which is personal property, and hence are a lien on the real estate of the Central Company subject and inferior to the lien of the mortgages. The claimants insist that the gross product tax is a tax on mines and mining claims, measured by the value of the gross product thereof during the previous year, and a first lien thereon.

It is well settled that coal and other minerals, when severed from the realty in which they are found, become personalty. Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313; Carpenter v. Shaw, 134 Okl. 29, 272 P. 393, reversed on other grounds 280 U. S. 363, 50 S. Ct. 121, 74 L. Ed. 478; Kelley v. Ohio Oil Co., 57 Ohio St. 317, 49 N. E. 399, 39 L. R. A. 765, 63 Am. St. Rep. 721. It is therefore necessary to determine whether the gross product tax is a tax on the minerals after they have been severed, or a tax on the realty measured by the gross mineral product thereof. This requires a construction of the pertinent constitutional and statutory provisions of Wyoming.

Article 15 of the Wyoming Constitution provides in part as follows:

"Section 1. Assessment of lands.

"All lands and improvements thereon shall be listed for assessment, valued for taxation and assessed separately.

"Sec. 2. Assessment of coal lands.

"All coal lands in the state from which coal is not being mined shall be listed for assessment, valued for taxation and assessed according to value.

"Sec. 3. Mines—Taxation of.

"All mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, mineral oil or other valuable deposit, is or may be produced shall be taxed in addition to the surface improvements, and *in lieu of taxes on the lands,* on the gross product thereof, as may be prescribed by law; provided, that the product of all mines shall be taxed in proportion to the value thereof." (Italics ours.)

To carry out the provisions of section 3, supra, the Wyoming Legislature enacted the following statute:

Section 115-601, Wyo. Rev. St. 1931.

"Return for assessment.

"The gross product of all mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, petroleum, or other crude or mineral oil, or natural gas, or other valuable deposit is, or may hereafter be produced, while the same are being worked or operated, but not while the same are simply in the course of development, shall be returned by the owner, owners, lessee, or operator thereof for assessment for taxation, assessed for taxation, and taxed in the manner provided for in this article *and such tax shall be in addition to any tax which may be assessed upon the surface improvements of such mines or mining claims, and in lieu of taxes upon the land* of such claims while the same are being worked or operated. (L. '03, c. 81, § 1; C. S. '10, § 2449; L. '17, c. 11, § 1; C. S. '20, § 2906." (Italics ours.)

Section 115-602 provides that the owner, lessee or operator of mines producing certain specified metals, shall make a return each year to the State Board of Equalization by a sworn assessment schedule setting forth the gross production for the preceding year, and in the succeeding sections it is required that the board shall equalize and fix the valuation of such property for the current year and certify it to the assessors of the several counties in which the property is located.

In Miller v. Buck Creek Oil Co., 38 Wyo. 505, 269 P. 43, 73 A. L. R. 821, the court held that section 115-601 imposed a tax on property, but did not decide whether such tax was imposed on realty or personal-

ty. That decision in effect holds that the gross product tax is not a severance tax and, being a construction of the Constitution and statutes of Wyoming, is binding upon this court. Hawks v. Hamill, 288 U. S. 52, 53 S. Ct. 240, 77 L. Ed. 610; Oklahoma G. & E. Co. v. Wilson & Co. (C. C. A. 10) 54 F. (2d) 596, 598; 28 USCA § 725, note 8.

■ The statute, stripped of verbiage, provides that the gross product of all mines and mining claims while they are being operated, shall be returned by the owner, owners, lessee, or operator and assessed for taxation, and that such tax shall be in addition to any tax assessed upon the surface improvements of such mines, and in lieu of taxes upon the "land of such claims" while they are being worked. The gross product is the thing which must be returned for assessment and taxation, and not the land. The phrase "in lieu of taxes imposed upon the land," indicates that the tax is to be imposed upon the product instead of the land, and that the latter is to be exempted during such time as it is being worked or operated for the production of minerals.

In Montana the statute on taxation of mines provides for the taxing of mines and mining claims at the price paid the United States, unless the surface thereof is valuable for other purposes, and in such cases such additional value is taxed. The statute then provides that the annual net proceeds shall be taxed. In Northern Pac. R. Co. v. Musselshell County, 54 Mont. 96, 169 P. 53, 55, the court said:

"As to the subsurface contents the theory was adopted that they should be regarded as having no taxable value other than so far as they might add to the resources of the owner by the yielding of a profit. Hence the last clause was added which in effect made an exemption of the contents from taxation so long as they should not prove a source of profit by being extracted and converted into personal property."

Article 15, § 2, Wyoming Constitution, provides that coal lands, while not in operation, shall be taxed according to value. We do not find any statute specifically carrying out this constitutional provision. However it is clear, when considered in connection with section 3, which provides for a tax on the gross product, that section 2 does not contemplate the taxing of the mineral in place. Section 3 and the statute enacted to carry it out, indicate that mineral is exempt from taxation until produced, and that a tax

in lieu of a tax on the land is then to be levied on the severed product.

In Miller v. Buck Creek Oil Co., 38 Wyo. 505, 269 P. 43, 44, 73 A. L. R. 821, the court said:

"It is perhaps doubtful whether the tax in question ought to be considered a tax upon the mining claim, or upon the oil produced therefrom. While it is based upon the value of the oil, it is declared to be in lieu of taxes on the mining claim. We are informed that it is the practice of the state board of equalization to assess the entire tax against the operating and producing company. Royalty interests are not separately taxed. The propriety of the practice is not questioned. It has been followed in this case, and the entire tax has been assessed against, and paid by, the lessee. The practical result is that the tax paid by the lessee is in lieu, not only of taxes on the mining claim, but also of taxes on the lessors' royalty interest. * * * If a mining lease provides that the lessor shall have as royalty a certain share * * * of the minerals taken from the land, it might well be considered, for the purpose, at least, of taxation, that the lessor was the owner of the oil which he received as royalty, and assumed that, in the absence of an agreement in regard to the payment of a property tax based on production, each party to the lease intended that he should be liable for the tax on his share of the production."

The Special Session of the Wyoming Legislature in December, 1933 (chapter 54), amended section 115-601, Wyo. Rev. St. 1931, by adding:

"And said tax shall be a first and prior lien upon the products so levied upon, and the tax thus levied shall be collected from the person against whom the same was levied, if such person has real or personal property within the State, out of which payment can be enforced, and it shall be the duty of the County Treasurer by distraint, attachment or otherwise, to first endeavor to collect the tax from the person assessed therefor; provided, however, that if the tax can not be so collected, said tax may be enforced against the land from which such products shall be extracted, and said tax from the date of its assessment shall be a lien on the land."

■ If the gross product tax was a tax on the realty, then it was a lien upon such realty and this amendment was wholly unnecessary. It therefore amounts to a legislative

construction of section 3, art. 15, and the gross product tax statute to the effect that the tax is upon the severed product. A construction of a statute by the Legislature, as indicated by a subsequent enactment, is entitled to consideration as an aid in interpreting such statute. Bailey v. Clark, 21 Wall. 284, 22 L. Ed. 651; First Nat. Bank in St. Louis v. State of Missouri, 263 U. S. 640, 658, 44 S. Ct. 213, 68 L. Ed. 486; Tiger v. Western Investment Co., 221 U. S. 286, 309, 31 S. Ct. 578, 55 L. Ed. 738.

While to hold that the gross product tax is a tax on the land from which the mineral is produced, would be advantageous to the claimants in this case, it is doubtful that such a holding would generally benefit the state. Much oil and other minerals produced in Wyoming are derived from lands of the United States and the state which are exempt from taxation.

■ We conclude that the gross product tax is a tax on personal property, and that the lien therefor on the real estate of the Central Company is subject and inferior to the lien of the first mortgage.

The receivership is not one to wind up the affairs of the corporation; it is an operating receivership to foster and conserve the assets. Foreclosure is not contemplated immediately, if at all.

In Michigan v. Michigan Trust Co., 286 U. S. 334, 344, 52 S. Ct. 512, 515, 76 L. Ed. 1136, the court said:

"Viewing the receivership in its true light as one, not to wind up the corporation, but to foster the assets, we think the annual taxes accruing while the receiver was in charge must be deemed expenses of administration and therefore charges to be satisfied in preference to the claims of general creditors."

In High on Receivers (4th Ed.) § 881a, it is said:

"Taxes levied upon personal property in the hands of a receiver become a charge upon the estate, and are properly payable by the receiver as a part of the costs and expenses of the administration of the trust."

See also Adair v. Beverly Hills Petroleum Corp. (D. C. Cal.) 59 F.(2d) 94; Coy v. Title Guarantee & Trust Co. (C. C. A. 9) 220 F. 90; Tardy's Smith on Receivers (2d Ed.) Vol. II, p. 1861.

■ The taxes assessed on the personal property for 1931 and 1932, as well as the gross product tax assessed in 1932 on coal produced in 1931 during the receivership, were assessed and accrued during the receivership and are expenses of administration and are properly payable as such.

■ The court properly held that the gross product tax assessed on coal produced prior to the receivership and the taxes on personal property assessed in 1930 prior to the receivership, the lien for which is inferior to the first mortgage, should be paid prior to any distribution to unsecured creditors out of any funds, monies or properties not subject to the lien of the first mortgage.

The interest imposed by Wyo. Rev. St. 1931, § 115-2303, here involved, accrued after the property of the Central Company in Wyoming had passed into the hands of the receiver, and was in custodia legis.

■ It is a general rule that after an estate of an insolvent has come into custodia legis, interest thereafter accruing on claims against the estate will not be allowed.[1]

---

[1] The rule and the reasons therefor are stated in American Iron & S. Co. v. Seaboard Air Line Ry., 233 U. S. 261, 266, 34 S. Ct. 502, 504, 58 L. Ed. 949, as follows:

"And it is true, as held in Tredegar Co. v. Seaboard Ry., 105 C. C. A. 501, 183 F. 289, 290, that as a general rule, after property of an insolvent is in custodia legis interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest, from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt. But that rule did not prevent the running of interest during the receivership; and if, as a result of good fortune or good management, the estate

■ Where, however, the assets are sufficient to pay all·claims of equal dignity in full with interest accruing during receivership after the costs of administration have been provided for, interest should be allowed and paid on all claims.[2]

■ Where a creditor holds a prior lien, he is entitled to interest to the date of payment out of the proceeds derived from the property covered by such lien.[3]

■ Where there are claims of different rank or dignity and there are sufficient assets of the estate available to pay claims of a higher rank in full with interest accruing during receivership, interest will be paid on such claims to the date of payment, even though what remains is insufficient to pay claims of a lower rank.[4]

The general rule and the exceptions thereto are fully discussed in Fletcher's Cyc. Corp., Perm. Ed., vol. 16, § 7937.

■ It follows that the claimants were entitled to the allowance of interest on the taxes assessed on lands and improvements against which such taxes were a prior lien; to the allowance of interest on taxes assessed on personal property for 1931 and 1932, and the gross product tax assessed in 1932 on coal produced in 1931 during the receivership payable as expenses of administration; and to the allowance of interest on the remaining taxes payable out of any funds, monies, or properties not subject to lien of the first mortgage, or remaining after the lien of the first mortgage has been satisfied, and after provision has been made for the costs of administration, before any distribution is made to unsecured creditors.

## No. 1091.

After findings of fact and conclusions of law had been made and a decree entered, the Green River Water Company, Union Pacific Railroad Company, and the Union Pacific Coal Company filed a petition in intervention. Motions interposed by the receiver and trustees to strike the petition were granted. Petitioners have appealed.

The petition alleged that some of the lands on which coal was produced are held by the Central Company under leases from the interveners; that such leases are subject to forfeiture by the lessors for failure of the lessee to pay all taxes assessed against such lands; that $6,924.06 of the gross product taxes assessed against the Central Company in 1930 and 1931 was for production from such leased premises, and that- such taxes should be paid to prevent cancellation of the leases and to preserve them as assets of the receivership estate. The prayer of the petition was for a rehearing and that the decree be modified to require the receiver to pay such gross product taxes prior to any distribution to the bondholders.

■ A petition to intervene in a pending suit is ordinarily within the discretion of the

---

proved sufficient to discharge the claims in full, interest as well as principal should be paid."

See also Tredegar Co. v. Seaboard Air Line Ry. (C. C. A. 4) 183 F. 289, 290, 291; McCormick v. Puritan Coal Min. Co. (C. C. A. 3) 41 F.(2d) 213, 214; Ohio Savings Bank & T. Co. v. Willys Corp. (C. C. A. 2) 8 F.(2d) 463, 468, 44 A. L. R. 1162; Gamble v. Wimberly (C. C. A. 4) 44 F.(2d) 329, 331; Samuels v. E. F. Drew & Co. (C. C. A. 2) 292 F. 734, 736.

[2] Ohio Sav. B. & T. Co. v. Willys Corp. (C. C. A. 2) 8 F.(2d) 463, 44 A. L. R. 1162; American I. & S. Co. v. Seaboard Air Line Ry., 233 U. S. 261, 266, 34 S. Ct. 502, 58 L. Ed. 949; Gamble v. Wimberly (C. C. A. 4) 44 F.(2d) 329, 331.

[3] Spring Coal Co. v. Keech (C. C. A. 4) 239 F. 48, 51, 52, L. R. A. 1917D, 1152; Central Trust Co. v. Condon (C. C. A. 6) 67 F. 84, 98; McFarland v. Hurley (C. C. A. 5) 286 F. 365, 367; Bright v. State of Arkansas (C. C. A. 8) 249 F. 953; American I. & S. Co. v. Seaboard Air Line Ry., supra; Central Nat. Bank of Phila. v. Bateman & Companies, 15 Del. Ch. 31, 131 A. 202, 204; American Surety Co. of New York v. Peyton, 186 Minn. 588, 244 N. W. 74, 75.

[4] Spring Coal Co. v. Keech (C. C. A. 4) 239 F. 48, 51, 52, L. R. A. 1917D, 1152; American I. & S. Co. v. Seaboard Air Line Ry., 233 U. S. 267, 34 S. Ct. 502, 58 L. Ed. 949; Central Trust Co. v. Condon (C. C. A.) 67 F. 84, 98.

In Spring Coal Co. v. Keech, supra, the court said:

"But where there are debts of different rank or dignity, this general rule does not apply. Mr. Justice Lamar, in the case of the American Iron Co. v. Seaboard Air Line Railway, 233 U. S. 261, 34 S. Ct. 502, 58 L. Ed. 949, said:

" 'Principal as well as interest, accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full'—citing Central Co. v. Condon, 67 F. 84, 14 C. C. A. 314; Richmond v. Richmond Railroad Co., 68 F. 105, 15 C. C. A. 289, 34 L. R. A. 625; First National Bank v. Ewing, 103 F. 168, 43 C. C. A. 150.

trial court, and an order denying it is not final nor appealable.[5]

Where, however, the petitioner has a direct interest in the subject-matter of the suit and his rights may only be asserted and protected through intervention, his right to intervene is absolute, and an order denying his petition to intervene is final and appealable.[6]

Here the petitioners had no direct interest in the subject-matter of the claim for taxes which could be protected only through intervention in the receivership proceedings, and whether intervention should have been permitted was within the discretion of the trial court, and its order denying the petition was not final nor appealable.

In No. 1090 the decree is modified in accordance herewith, and as modified affirmed.

In No. 1091 the appeal is dismissed.

The costs will be assessed against the appellants on each appeal.

"In the case of Central Trust Co. v. Condon, 67 F. 84, 14 C. C. A. 314, Circuit Judge Taft, in delivering the opinion of the court, said:

" '* * * In the distribution of the proceeds of a common security between liens of different priorities, we know of no principle by which interest can be stopped on the amount of the superior lien until its satisfaction. As between the bondholders and the lienholders, the lienholders are entitled to interest to the day of payment.' "

5 Credits Commutation Co. v. United States, 177 U. S. 311, 20 S. Ct. 636, 44 L. Ed. 782; In re Cutting, 94 U. S. 14, 24 L. Ed. 49; Indiana S. R. Co. v. Liverpool, London & G. Ins. Co., 109 U. S. 173, 3 S.

Ct. 108, 27 L. Ed. 895; Farmers' & Merchants' Bank v. Arizona M. S. & L. Ass'n (C. C. A. 9) 220 F. 1, 7; Board of Drainage Com'rs v. Lafayette Southside Bank of St. Louis (C. C. A. 4) 27 F.(2d) 286.

6 United States v. California Co-op. Canneries, 279 U. S. 553, 49 S. Ct. 423, 73 L. Ed. 838; Demulso Corp. v. Tretolite Co. (C. C. A. 10) 74 F.(2d) 805 (decided December 19, 1934); Ætna Casualty & Surety Co. v. American Surety Co. (C. C. A. 4) 64 F.(2d) 577; United States v. Radice (C. C. A. 2) 40 F.(2d) 445; United States Trust Co. v. Chicago Terminal Transfer R. Co. (C. C. A. 7) 188 F. 292; Illinois Steel Co. v. Ramsey (C. C. A. 8) 176 F. 853.