## GALANTE v. COMMODITY CREDIT CORPORATION.

### No. 4320.

District Court, S. D. California, Central Division.

May 28, 1947.

964

William A. Reppy and Neil D. Heily, both of Oxnard, Cal. for plaintiff.

James M. Carter, U. S. Atty., and Ronald Walker and Charles H. Veale, Asst. U. S. Attys., all of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

This is an action on the part of plaintiff against the defendant for the recovery of $10,419.48, which sum represents the profit made by the defendant corporation from the sale of grapes purchased from the plaintiff.

The parties hereto have agreed on a stipulation of all the facts necessary for a decision in this action. The stipulation is as follows:

"The defendant, Commodity Credit Corporation, is a corporation, stock of which is owned wholly by the government of the United States of America. The plaintiff, Mary Galante, at all times pertinent to the case was the owner of a grape vineyard in Tulare County, California, from which Thompson seedless grapes were produced. Plaintiff was producing a crop of grapes on said vineyard in the growing season of 1943.

"At all times during the 1943 crop season, plaintiff exercised the usual and reasonable husbandry practiced by growers generally in that district for the care and conservation and production of their crops.

"In 1943 the United States was at war, and for the purpose of causing a high production of raisins, the War Food Administration, an agency of the United States Government, issued an executive order on January 30, 1943, and an amended order on June 25, 1943, the provisions of which covered the plaintiff's 1943 crop. This order had the effect on plaintiff of prohibiting plaintiff from selling her 1943 crop except (1) to the Food Distribution Administration; (2) to a person designated by the Director of Food Distribution, United States Department of Agriculture; or, (3) to a dehydrator. Said order also prohibited any person, unless specifically authorized by the Director, from purchasing, accepting delivery of or using raisins for conversion into brandy, alcohol or certain other by-products. A subsequent amendment to this order provided that no dehydrator should convert raisin variety grapes into raisins by any method other than sun-dried unless authorized by the Director.

"In addition to the above, the War Food Administration established a program for the purpose of affording, during the war emergency, a suitable market for and proper utilization of raisin grapes not suitable for making into standard grade raisins and substandard grade raisins. The purpose of this phase of the program was to make additional provision that as many raisins as possible went for essential civilian and war needs. The defendant, Commodity Credit Corporation, was utilized by the War Food Administration to aid in carrying out this program. The capital funds of the Commodity Credit Corporation were to be used to purchase the raisin grapes not suitable for making into standard grade raisins and the substandard grade raisins at a set price which was commensurate with the ceiling price which could be obtained by growers making their own sun-dried raisins. Commodity Credit Corporation was not in the business of purchasing grapes for resale and was acting solely to carry out the general program set up by the War Food Administration for the purpose of causing the production of as many raisins as possible. By contractual arrangement, Raisin Producers Association, a non-profit California corporation, acted as agent for Commodity Credit Corporation in buying, selling and handling the grapes with which Commodity Credit Corporation was to deal under the Raisin Program.

"Plaintiff's 1943 crop of grapes was of a type unsuitable for conversion into standard quality raisins. Because of this fact plaintiff was authorized by the said Director of Food Administration to contract with Commodity Credit Corporation for the sale of her grapes to said defendant. Having determined that she could not make her own sun-dried raisins, plaintiff had no other choice than to sell to Commodity Credit Corporation, since the executive order forbade the sale of raisin-type grapes for any other purpose than raisins. On the first day of October, 1943, plaintiff entered into a contract with the defendant, a copy of which is attached to and made a part of the complaint herein. In said contract it was recited that the defendant had initiated a raisin program for the purpose of affording in the war emergency a suitable market for and proper utilization of the 1943 crop of raisins, including raisin grapes not suitable for making into standard grade raisins. In this contract, plaintiff agreed to sell and defendant agreed to purchase a certain lot of grapes and raisins of the 1943 crop located on plaintiff's ranch in Tulare County. Defendant agreed to pay plaintiff for her grapes the sum of $33.00 per ton. Under this contract the great majority of plaintiff's grapes, with the permission of the Director of Food Administration, were delivered to a dehydrator for processing into dehydrated raisins. Commodity Credit Corporation paid plaintiff therefor the sum of $33.00 per ton. Commodity Credit Corporation was paid an equivalent price by the dehydrator.

"On or about the tenth day of October, 1943, the said Director authorized the delivery of the balance of plaintiff's crop, to-wit, 342.01 tons of grapes, to the Robert McClure Winery near Exetor, California, and on or about said day such delivery was made to said winery, said winery carried the said transaction under the account of Raisin Producers Association, acting as agent for Commodity Credit Corporation. Commodity Credit Corporation paid plaintiff for said grapes the sum of $33.00 per ton. However, Commodity Credit Corporation received from said winery the sum of $64.64 per ton. Said Commodity Credit Corporation retained the difference between these two prices, to-wit, the sum of $10,419.48. Nothing was specifically set forth in said contract as to what would be done with any surplus which Commodity Credit Corporation might receive.

"In connection with the program for the following year direct provision was made for the repayment of surpluses obtained by Commodity Credit Corporation as a result of its transactions with the grape producers. In the planning of the raisin program for the year 1944, the matter was discussed at government and trade conferences at Washington and at Fresno during the spring of 1944. It was recommended that any profit made by defendant from the sale of raisin variety grapes for non-raisin use (principally beverage and table use) over and above that which could be obtained on such grapes if dried into raisins, be dis-

tributed back among the growers. Moreover, in the contracts between the defendant and the 1944 growers there was a special provision providing for the distribution to all the growers of raisin variety grapes of the balance of any fund in the hands of the Commodity Credit Corporation after paying the stated price in the contract to the growers."

In the year 1943 the government was engaged in the prosecution of a war, and this action stems from an exercise of wartime powers. In March of 1943, under Executive Order No. 9322, 50 U.S.C.A. Appendix, § 601 note, entitled "Centralizing and Delegating Authority with Respect to the Production and Distribution of Food", which was promulgated by the President as Commander-in-chief of the Army and Navy by virtue of the authority of the Constitution and Statutes of the United States, and especially by the First War Powers Act of 1941, 50 U.S.C.A.Appendix, § 601 et seq., the President of the United States at that time consolidated numerous governmental instrumentalities, including the Commodity Credit Corporation, into what was known as the War Food Administration, to be administered under the direction and supervision of a War Food Administrator. Among other commodities falling under the jurisdiction of the War Food Administration was the grape industry.

Pursuant to the rules and regulations established by the War Food Administrator, the United States of America, acting through Commodity Credit Corporation, made a certain contract in writing dated October 1, 1943, with the plaintiff in this action. The contract is attached to the plaintiff's complaint and marked "Exhibit A" for identification.

The plaintiff contends that she is entitled to the profit by virtue of:

(1) The fact that in equity and good conscience she should receive the profit,

(2) The provisions of the Fifth Amendment would be violated if she did not receive the profit, and

(3) The intent and interpretation of the contract (Exhibit "A" attached to complaint) is that she was to receive the profit.

■ It is true, as plaintiff contends, and is sustained by the authorities, that assumpsit will lie whenever the defendant has received money which is the property of the plaintiff, which the defendant is obliged by natural justice and equity to pay. This is so irrespective of whether the money was received from the plaintiff or from a third person. Bayne v. United States, 93 U.S. 642, 23 L.Ed. 997; Gaines v. Miller, 111 U.S. 395, 4 S.Ct. 426, 28 L.Ed 466; Myers v. Hurley Motor Co., 273 U.S. 18, 47 S.Ct. 277, 71 L.Ed. 515, 50 A.L.R. 1181.

■ It is the opinion of the court that this rule does not apply in this action. Had the defendant sold the grapes at a loss, there would be no action against the plaintiff for the loss.

■ If the interpretation of the contract were to be adopted as contended for by the plaintiff, it would mean that whenever the government made a contract for the purchase of war materials such as guns, planes, ammunition, boats and similar articles from manufacturers, and sold the materials at a profit to—for instance—a foreign government, the manufacturer could then compel the government to account to it for the profit realized. This would lead to endless confusion. In time of war burdens and sacrifices, even to the destruction of private business, result from changed conditions, but no material loss can in the slightest degree measure up to the loss in human life.

■ The Supreme Court of the United States said: "Hardships are part of war, and war is an aggregation of hardships. All citizens alike, both in and out of uniform, feel the impact of war in greater or lesser measure. Citizenship has its responsibilities as well as its privileges, and in time of war the burden is always heavier." Toyo Saburo Korematsu v. United States 323 U.S. 214, 217-219, 65 S.Ct. 193, 195, 89 L.Ed. 194; Kiyoshi Hirabayashi v. United States 320 U.S. 81, 99-102, 63 S.Ct. 1375, 87 L.Ed. 1774.

The contention that the provisions of the Fifth Amendment to the Federal Constitution would be violated if the plaintiff did not receive the profit, is answered in the opinion of Judge Yankwich, Gray v. Com-

modity Credit Corp., D.C., 63 F.Supp. 386, at page 395, and cases cited in footnote. This exhaustive opinion was affirmed in Gray v. Commodity Credit Corporation, 9 Cir., 159 F.2d 243, 244, where the Circuit Court of Appeals expressly said: "The trial judge filed a written opinion * * * with which we in general agree."

The third contention of the plaintiff, that it was the intent and interpretation of the contract that the plaintiff was to receive the profit, cannot be sustained. The contract is clear and unambiguous, and there is not a single sentence or paragraph that could possibly lead to such a construction. To adopt the construction claimed by the plaintiff would require the court to write a new contract. The language here is not ambiguous and its terms are clearly understandable. There is no contention that there was a mutual mistake, and no prayer for reformation of the contract.

Section 1635 of Civil Code, State of California, provides: "All contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by this code."

Section 1639 of Civil Code, State of California, provides: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."

Section 1641 of Civil Code, State of California, provides: "The whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

This question was also passed upon in Gray v. Credit Commodity Corporation, supra.

An entirely different contract was entered into by and between the War Food Administration and the grape growers for the 1944 crop. The object of the contracts for both years was the same, to wit, to encourage the production of raisin variety grapes. The 1944 contract provided for a distribution of the profits. This would lend force to the argument that such a distribution was not contemplated by the parties in the 1943 contracts.

"Courts of equity no more than courts of law have power to make contracts for persons or corporations, nor can courts substitute their judgment for the judgment of the parties to a contract. It is the duty of courts to construe and to enforce valid contracts as the parties made them." Spring Coal Co. v. Keech, 4 Cir., 239 F. 48, 51 L.R.A.1917D, 1152.

The forceful argument of the plaintiff should be more properly addressed to the Congress of the United States.

Judgment for the defendant with costs.

Findings of fact, conclusions of law, and judgment will be submitted within ten days.