[No. 25771. *En Banc.* February 25, 1936.]

THE STATE OF WASHINGTON, *on the Relation of Howard H. Hansen, as State Supervisor of Banking, Appellant,* v. CHELAN COUNTY *et al., Respondents.*[1]

[1]Reported in 54 P. (2d) 1006.

328

*LeRoy McCann, McCann, Edwards & Murray,* and *Fred Reeves,* for appellant.

*Sam M. Driver* and *L. J. Gemmill,* for respondents.

MAIN, J.—This action was brought by the state supervisor of banking to require the county treasurer of Chelan county to pay over to him as such supervisor certain funds in her hands which, it was claimed, were assets of the estate of an insolvent bank. To the petition, a demurrer was interposed and sustained. The bank examiner refused to plead further and elected to stand upon his complaint. Judgment was entered dismissing his petition, from which he appeals.

The facts are these: The Dryden State Bank was a corporation conducting a banking business at Dryden, in Chelan county. On or about January 2, 1931, the treasurer of Chelan county designated this bank as a depositary for public funds required by her to be kept as such treasurer. At the time the bank was designated as a depositary, a contract was entered into by it with the county to pay interest at two per cent per annum on the average daily balances of moneys deposited by the county treasurer. The contract contained the further provision that,

"In event the party of the first part [the bank] becomes insolvent, or the checks or demands of the party of the second part, acting by and through its treasurer, are not met and complied with by the payment of the moneys on deposit, then such funds on deposit shall bear interest from the date of insol-

vency or default and refusal or neglect to pay, at the rate of six per centum per annum.''

The bank became insolvent February 2, 1932, and passed into the hands of the state bank examiner. The county treasurer had on deposit with it at this time the sum of $4,000. The county treasurer, instead of taking a surety bond to cover her deposits, took a pledge of securities from the bank, which, by the statute (Rem. Rev. Stat., § 5563 [P. C. § 1836]), she was permitted to do. After the closing of the bank, the treasurer from time to time collected upon the pledged securities, and on May 1, 1934, all the securities had been liquidated and there had been received therefrom by the treasurer $4,687 in all. This was $687 in excess of the principal on deposit when the bank closed.

The treasurer contended that out of the $687 there should be withheld for the county $469.09, that being the amount of interest that would have accrued from the time the bank closed, if computed at the rate of six per cent per annum, upon the diminishing balances of the deposit. She offered to pay the state bank examiner the difference between the two sums mentioned, or $226.91, in full settlement. The bank examiner took the position that the contract made January 2, 1931, to pay six per cent interest after insolvency, was one which the bank had no power to make, and that the highest rate of interest the treasurer was entitled to demand was two per cent per annum. The bank examiner claimed that he was entitled to $533.64 out of the $687 remaining after paying the principal on the indebtedness out of the liquidated securities. The treasurer, as already indicated, refused to pay more than $226.91.

The ultimate question presented upon the appeal is whether the bank had a right to make a contract with

the treasurer to pay six per cent upon the deposit after insolvency.

Rem. Rev. Stat., § 5562 [P. C. § 1835], provides that each county treasurer in this state shall annually, on the second Monday in January, designate one or more banks in the state as depositary or depositaries of public funds held and required to be kept by such treasurer. Section 5563 [P. C. § 1836] provides that, before any designation shall become effectual and entitle the treasurer to make deposits, the bank or banks so designated shall file with the county clerk of such county ''a surety bond to such county treasurer, properly executed by some reliable surety company'' qualified under the laws of this state to do business herein, in the maximum amount of the deposits designated by the treasurer to be carried in such bank or banks. This section further provides that the depositary or depositaries may deposit with the county treasurer ''in lieu of the surety bond herein provided for'' any of the following enumerated securities, specifying them. Section 5564 [P. C. § 1837] provides that, before any designation shall become effectual and entitle the treasurer to make deposits, the bank or banks so designated

''. . . shall also enter into a written contract with the county whose treasurer is to make such deposits, to pay to said county, . . . two per centum per annum on the average daily balances of all moneys so deposited by such county treasurer in said bank while acting as such depositary; . . .''

██ A consideration of the three sections of the statute mentioned, from which excerpts are quoted, discloses that in none of them is there any provision limiting or prohibiting the county treasurer from contracting for a greater rate than two per cent in the event of insolvency. Section 5564 [P. C. § 1837], in

the excerpt quoted, says that there shall be two per cent paid on the average daily balances while the bank is acting as such depositary. After the bank became insolvent, it could not be said to be a depositary paying two per cent on daily balances. When the insolvency occurred, the bank's liability became fixed and settled in the amount of the deposit at that time, which in this case was $4,000.

Turning now to the question of whether the bank had a right to make the contract, Rem. Rev. Stat., § 3261 [P. C. § 304], which is one of the sections of the state banking law, provides that no bank shall pledge any of its securities to any depositary

". . . except that it may qualify as depositary for . . . public funds deposited by any public officer by virtue of his office and may give such security for such deposits as are required by law or by the officer making the same; . . ."

In this case, as above seen, the security required by law is either a bond or in lieu thereof certain designated bonds, notes or other obligations as specified in § 5563 [P. C. § 1836]. Section 3261 [P. C. § 304] goes farther than covering the pledging of securities for deposits as required by law and authorizes the pledging thereof of such securities as "the officer making the same" may require. In this case, the officer required the deposit of the securities which were taken in lieu of a surety bond, and also a contract to pay six per cent interest after insolvency. Had the treasurer taken a surety bond to protect her deposits under the contract mentioned, there can be no doubt that the surety company would be bound by the contract and required to pay six per cent interest after insolvency, because its liability would become fixed and enforcible at that time. *Lucas v. American Bonding Co.*, 174 Wash. 433, 24 P. (2d) 1084.

The legislature, in authorizing the county treasurer to take designated bonds, etc., in lieu of a surety bond, certainly did not intend that public funds should have less protection when the substituted securities should be taken rather than a surety bond. The statute says the bonds, etc., may be taken in lieu of a surety bond. Neither the county nor the bank having exceeded its authority in making the contract to pay six per cent after insolvency, it follows that the contract was valid and enforcible.

By virtue of the contract and the pledging of securities, the county treasurer became a creditor of the insolvent bank, protected by its contract, and therefore entitled to be paid in full, even though the bank liquidation did not produce sufficient assets to pay the other depositors.

In *Spring Coal Co. v. Keech,* 239 Fed. 48, after reviewing the authorities, it was said:

"We think a careful reading of all the authorities will show that where estates are insolvent and all the claims are of like dignity, the court declares the dividend upon the basis of the amount of principal due at the time the property passed into the hands of the court, because it is immaterial whether the dividend is calculated upon the interest and principal combined, or the principal alone; but where there are claims of different classes, and one is secured by a mortgage of real estate, the holder of such mortgage is entitled, not only to the principal, but to the interest that accrues up to the time of satisfaction, even though non-lien creditors may not receive any dividend at all. This must be so if the court enforces contracts as parties made them. . . ."

In *American Iron Co. v. Seaboard Air Line R.,* 233 U. S. 261, 34 S. Ct. 502, it is said:

"Principal as well as interest, accruing during a receivership, is paid on debts of the highest dignity,

even though what remains is not sufficient to pay claims of a lower rank in full. [Citing authorities.]"

In the case now before us, the county treasurer, having taken the pledge of securities and the contract, became a creditor of a higher class than the other depositors.

The judgment will be affirmed.

MITCHELL, HOLCOMB, BEALS, BLAKE, STEINERT, and GERAGHTY, JJ., concur.

MILLARD, C. J., and TOLMAN, J., dissent.

[1]Reported in 54 P. (2d) 1010.