## Thompson's Estate

*Thomas Hallman* and *Raymond Pearlstine*, for accountant.

*J. Barton Rettew, Jr.*, assistant United States attorney, for collector of internal revenue, claimant.

*James M. Love, J. Harry Wagner, Jr.*, and *Smillie & Bean*, for other claimants.

HOLLAND, P. J., July 28, 1942.—The question here is whether the adjudication of this court upon an administrator's final account should be opened, and a claim of the collector of internal revenue for social security taxes owing by decedent allowed, although notice of the claim was not given until after the audit of the account.

Decedent died on May 19, 1938, intestate and insolvent. Letters of administration were granted to accountant on May 20, 1938, and were duly advertised as required by section 10 of the Fiduciaries Act of June 7, 1917, P. L. 447. The administrator liquidated the assets of the estate, paid administration expenses and funeral expenses, and, on May 23, 1940, filed his

first and final account showing a balance of $991.96 in cash for distribution.

The account was examined and audited by the court on October 2, 1940. In the petition for adjudication then filed, the unpaid claims of creditors, of which accountant had "notice or knowledge", are set forth. A claim of $119 for medical services in decedent's last illness was allowed preferred status. Two other claims were contended to be entitled to preference: Commonwealth of Pennsylvania, delinquent contributions to unemployment compensation for 1937 and 1938 amounting to $867.75, plus interest; Fidelity & Casualty Insurance Company of New York, delinquent workmen's compensation insurance premiums, $600.07. Both these claims were denied preference by the adjudication. That of the Commonwealth was held payable last, on the authority of Marberger's Estate, 56 Montg. 30 (1939). Upon the same authority the claim for workmen's compensation insurance premiums was allowed to share with the general creditors. The fourteen general claims, aggregating $9,061.60, were allowed and were awarded dividends on a basis of .0903529 in a schedule of distribution incorporated in the adjudication. Therein the preferred claim was also awarded.

The adjudication was filed and confirmed nisi on November 22, 1940. No exceptions thereto were filed so that according to rule 6, §1, of the rules of this court it became absolute on December 2, 1940.

In October 1940, the collector of internal revenue assessed delinquent social security tax against the decedent. A certified copy of the pertinent entries on the assessment list for that month in the office of the Collector of Internal Revenue for the First Pennsylvania District is in evidence. This shows that decedent's account was debited on September 20, 1940, for delinquent 1937 tax, in the amount of $69.50, and on September 23, 1940, for delinquent 1938 tax, in the

amount of $92.29, a total of $161.79. The copy of the assessment list shows the assessment to be against "Samuel H. Thompson, 607 Washington St., Royersford, Pa., c/o Robert Thompson, 365 Second Ave., Phoenixville, Pa." Robert R. Thompson is the administrator of decedent's estate.

On November 7, 1940, the collector of internal revenue mailed a "Notice and Demand for Federal Unemployment Tax" for each of the amounts above set forth, plus interest to November 15, 1940. The "unpaid balance" shown thereon is $81.12 for 1937, and $102.22 for 1938, a total of $183.34. Copies of both notices were mailed by the collector, addressed to "Samuel H. Thompson, 607 Washington Street, Royersford, Pa., c/o Robert Thompson, 365 Second Ave., Phoenixville, Pa." On November 22, 1940, a "Second Notice and Demand for Social Security Tax" for each year was mailed by the collector, addressed to "Samuel H. Thompson, c/o Robert Thompson, 365 2nd Ave., Phoenixville, Pa." To the unpaid balance of the first notice, there is added a 25 percent penalty, then another penalty of five percent on top of that. The unpaid balances by that date had become: for 1937, $103.43; for 1938, $131.55; a total of $234.98.

The collector's petition avers that he was advised of decedent's death and of the adjudication upon the administrator's account on November 30, 1940, after which a proof of claim was sent to the administrator. A copy thereof is attached to the petition, and is dated December 19, 1940. This claims a total of $223.79, composed of: tax for 1937 and 1938, $161.79; interest to November 15, 1940, for both years, $21.55; penalty on both years, $40.45. Interest at six percent is claimed from November 16, 1940. The figures are the same as those in the second notice, but without the further five percent penalty there included.

On June 13, 1941, the collector of internal revenue filed his petition to open the adjudication. A hear-

ing was held on February 16, 1942, when the above-mentioned instruments were offered in evidence. Also submitted was an amended proof of claim, dated June 16, 1941. This contains the same items as the original, plus an additional assessment for 1937 in the amount of $449.44, 25 percent penalty thereon amounting to $112.36, and interest of $89.19, calculated to May 22, 1941. The total thus claimed is $874.78, with interest on $225.79 from November 16, 1940, and with interest on $650.99 from May 23, 1941.

By reason of the notice from the collector of internal revenue, received after the audit of his account but before the adjudication thereupon, the administrator did not make distribution as directed therein. The balance shown by the account, less an additional premium of $32 on his bond, is still in his hands.

The administration of this estate has been in conformity with the law of Pennsylvania. Notice by advertisement was given of the grant of letters, as required by section 10 of the Fiduciaries Act, and of the filing of the account, as required by section 46 (d) of that act. It was not incumbent upon the administrator, under the Fiduciaries Act, sec. 46 (c), and rule 3, §9, to give the collector of internal revenue actual notice of the filing of the account because the latter had not given written notice of his claim. Having failed to present his claim at the audit of the account, an ordinary creditor would not be entitled to share in the distribution of these assets, under section 49 (d) of the Fiduciaries Act. The only question is whether the Federal Government is in a different position from an ordinary creditor.

In United States v. Summerlin, 310 U. S. 414 (1940), it was held that a claim of the Government against a Florida decedent may not be barred although not filed until after the expiration of the eight months within which, under Florida statute, claims against decedents must be filed. The theory of the decision is that the

United States is not bound by a State statute of limitations, and that any statute which would invalidate the claim of the United States transgresses the limits of State power.

While the Florida probate procedure is not set out further in the report, it would seem that there is no direct or necessary connection between the time within which claims must be filed and the time when there is a proceeding actually before the probate court. The audit, or whatever the Florida equivalent is, if any, of a fiduciary's account may not occur until long after the eight months' period has expired. Hence the Government's claim there may well have been filed before final judicial action, although after the statutory time limit for filing.

In the instant case there were three further steps taken than appear in the report of the Summerlin case: (1) The administrator filed his final account; (2) the register gave notice of filing by publication once a week for four weeks; (3) the account was examined and audited by this court. Then the collector of internal revenue first gave notice of the claim. At that point two steps still remained to be taken: (1) The adjudication upon the account had not yet been filed and confirmed; (2) the administrator had not yet actually made distribution.

Although the question arises here at a later stage in the settlement of the estate than in the Summerlin case, the principle applied there is no less applicable here. Consequently we hold that the claim is not barred by failure to present it at the audit of the account because the United States is the creditor. As the administrator has not made distribution, this court is in the same position as the Supreme Court in the Summerlin case, and the circuit court in United States v. Hoar, Fed. Cas. No. 15,373 (1821), and is fortunately not called upon to decide whether a defense of *plene ad-*

*ministravit* would protect the administrator. That question remains open.

The balance for distribution in the schedule of distribution was $991.96. Further administration expenses, for which accountant is allowed additional credit, are: premium on bond, $32; additional counsel fee, $25. This will leave a balance of $934.96 for creditors. The claim of the United States is entitled to priority: Rev. Stat., §3466, 31 U. S. C. §191. The principal amount of the claim is $874.78, on which interest amounting to $45.42 is claimed, making the total $920.20. Ordinarily, of course, the rule in insolvent estates is that no interest will be allowed beyond the date of decedent's death. In support of the contention that interest must be allowed, the Government cites three cases.

(1) United States v. Childs, Trustee, 266 U. S. 304 (1924), involved a claim for income tax against a bankrupt estate. The claim was composed of tax, plus five percent penalty and one percent interest per month until paid, the claim for the penalty being later withdrawn. Section 57($j$) of the Bankruptcy Act then in effect specifically prohibited allowance of a penalty on a debt due the United States, but expressly permitted allowance of "such interest as may have accrued thereon according to law". The question was whether the one percent interest per month was in effect a penalty, although called "interest". The court held it was interest and allowed it as part of the claim.

(2) American Iron & Steel Manufacturing Co. v. Seaboard Air Line Railway, 233 U. S. 261 (1914), allowed plaintiff interest on a debt for goods sold on 30 days' credit in the absence of express agreement covering interest, from expiration of the 30 days until payment, although defendant went into voluntary receivership within the 30 days.

(3) Pearsall v. Central Oil & Gas Co. of America, 23 F.(2d) 716 (U. S. D. C., W. D. Pa. 1927), where,

also in an equity receivership, interest was allowed on a claim of the United States for taxes.

There is nothing apparent in any of these cases to compel the allowance of interest here. In the American Iron & Steel Manufacturing Company case there is a full discussion of the question (233 U. S. 261, 266, 267). The general rule, that "after property of an insolvent is in *custodia legis* interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property", is stated (p. 266). It is pointed out that interest is allowed in receiverships, and even in bankruptcy, where the estate proves sufficient to discharge claims in full. Here that is not the case. The amounts of the taxes due began with $611.23 ($161.79 on the first assessment, and $449.44 on the additional assessment). Penalties have enlarged the total to $874.78, an increase of over 43 percent. This penalizes neither decedent nor his heirs, but his creditors. Even without interest, general creditors, who before were awarded 9 cents on the dollar, get nothing; and the physician will get half his bill for medical services during decedent's last illness. There would seem to be no particular reason to seek out a way to punish decedent's creditors further, where no controlling authority has been pointed out by the Government.

And now, July 28, 1942, the adjudication of November 22, 1940, upon the first and final account of Robert R. Thompson, administrator, is opened, reviewed, and modified. The schedule of distribution incorporated therein is revoked. The claim of the United States is allowed in the sum of $874.78, without interest, but with priority against the balance for distribution after allowance of the additional administration expenses above set forth.