In re TITUS & McCONOMY, LLP, a Pennsylvania Limited Liability Partnership, formerly known as and/or also known as Titus & McConomy, a Pennsylvania General Partnership, Debtor.

Titus & McConomy, LLP, a Pennsylvania Limited Liability Partnership, formerly known as and/or also known as Titus & McConomy, a Pennsylvania General Partnership, Movant,

v.

TrizecHahn Gateway, LLC, Respondent.

No. 03–25332 BM.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 21, 2007.

Douglas Anthony Campbell, Ronald B. Roteman, Campbell & Levine, LLC, Pittsburgh, PA, for Debtor.

John P. Vetica, Jr., Coraopolis, PA, Neil H. Levin, for Respondent.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

TrizecHahn Gateway, LLP ("Trizec"), LLP, has filed a proof of claim in the amount of $3,274,037.99 for an alleged breach of a lease agreement by debtor Titus & McConomy ("T & M").

Debtor has objected to Trizec's proof of claim. According to debtor, Trizec's proof of claim is subject to the "cap" on a lessor's damages set forth at § 502(b)(6) of the Bankruptcy Code. The allowed amount of Trizec's claim, debtor asserts, is capped at $645,127.88 plus interest at the rate of twelve percent per annum on the portion of its claim that is subject to § 506(b)(6)(B).

We conclude for reasons which follow that Trizec has an allowed claim in the amount of $2,071,369.20.

## FACTS

Debtor was a law firm. It is now defunct and has dissolved.

Trizec is the owner of an office building located in Pittsburgh, Pennsylvania, which is known as Four Gateway Center.

Debtor and Trizec entered into a lease agreement on October 5, 1995, for space in Four Gateway Center which debtor used as its place of business. The term of the lease ran from October 1, 1995, through June 30, 2005.

As of February of 2000, the leasehold consisted of the entire twentieth floor, a portion of the twenty-first floor and storage space located in the basement of the building. The latter comprised only 3.3 percent of the entire leasehold.

The base rent for the entire leasehold from December 31, 1997, through October 1, 2000, was $461,184.00 per annum payable in equal monthly installments. The base rent increased to $446,757.00 for the remainder of the lease term and also was

payable in equal monthly installments. In addition to base rent, debtor was obligated to pay as additional rent its pro rata share of any increases in taxes and operating costs.

Debtor decided in August of 1999 to dissolve and wrap up its business affairs. In a letter dated August 18, 1999, debtor notified Trizec that the majority of its partners were leaving the firm and that its space would be available and should be re-let. Debtor then abandoned the twentieth and twenty-first floors, but left behind files in the basement storage area.

Even though it had abandoned the leasehold, debtor continued paying rent for a period of time thereafter. The last rent payment by debtor was for January of 2000. As of the end of February of 2000, debtor was one month in arrears on its rent.

Trizec notified debtor on April 18, 2000, that debtor was in default of its obligations under the lease.

Trizec sent another letter to debtor on July 14, 2000, in which it informed debtor that file boxes and other miscellaneous items remained in the basement storage space and requested that debtor remove them. Debtor responded in a letter to Trizec dated July 18, 2000, that it would be "happy" to remove the items and inquired whether it could gain access to the twentieth floor to also remove files located there.

Debtor removed the items from the basement storage space on or about August 3, 2000. For its part, Trizec released debtor from its obligation to pay rent for the basement storage space as of August 1, 2000. It did not, however, do the same for the twentieth and twenty-first floors.

At some unspecified time in the year 2000, Trizec commenced a civil action in the Court of Common Pleas of Allegheny County, Pennsylvania, against debtor and its general partners [1] to recover all amounts remaining due under the lease agreement. It amended the complaint later on to also recover its cost of altering and re-letting the twentieth floor.

Trizec leased the space debtor had abandoned on the twenty-first floor to another tenant in March of 2001. Because that other tenant already had a separate lease for the remainder of the twenty-first floor and took "as is" the portion debtor had abandoned, Trizec did not incur any rebuilding or re-letting costs.

Trizec leased the twentieth floor to a new tenant commencing in January of 2003. It gutted and rebuilt the entire twentieth floor to make it suitable for the new tenant.

Debtor filed a voluntary chapter 11 bankruptcy petition on April 29, 2003, thereby automatically staying the above state court action brought by Trizec.

The schedules accompanying the petition indicated that debtor had assets with a total value of $2,386,000.00. Trizec was identified as having a disputed general unsecured claim in the amount of $2,375,000.00 arising from the above lease. Its claim is the sole disputed claim in debtor's bankruptcy and comprised in excess of 99.27% of the total scheduled prepetition debt.

Trizec ultimately filed a timely proof of claim in an unliquidated amount. It was based on debtor's alleged breach of the lease. Debtor objected to the proof of claim and asserted among other things that the claim, if allowed, was subject to the "cap" on damages for termination of a

1. Matters Trizec raised in the civil action in state court concerning debtor's individual partners are not relevant here and will not be addressed in this memorandum opinion.

lease found at § 502(b)(6) of the Bankruptcy Code.

Debtor's second amended plan of reorganization, which was confirmed on October 23, 2003, provided for treatment of four classes. They were, respectively: (1) administrative expense claims; (2) Trizec's claim; (3) "other" claims; and (4) the interests of debtor's general partners. Even though Trizec and the "other" claimants held general unsecured claims, Trizec was the sole member of class (2). According to the plan, classes (1), (2) and (3) were unimpaired.

On the effective date of the plan, Trizec and the "other" claimants in Class (3) were to receive in cash the allowed amount of their claims. In the event debtor lacked sufficient funds to pay the claims in full, its general partners were to contribute funds to the extent of their personal liability for the deficiency.

Within thirty days after adjudication of the present objection to Trizec's claim, debtor was required by the plan to deposit funds in an amount equal to the amount of Trizec's claim in an interest-bearing escrow account. Jurisdiction was retained for this court to hear and decide debtor's objection to Trizec's claim and to determine the allowed amount, if any, of Trizec's claim.

After the portion of Trizec's state court civil action relating to debtor's general partners had been removed to the district court and then remanded to state court, Trizec brought a motion in this court for relief from the automatic stay. Trizec sought permission to prosecute in state court its claim against debtor for breaching the lease and to liquidate damages. The motion was granted on February 25, 2004.

A final decree issued in debtor's bankruptcy case on May 11, 2004. The case was closed the following day.

After conducting a bench trial, a member of the Court of Common Pleas issued a series of memorandum opinions and orders.

The state court issued a memorandum opinion and order on March 30, 2005. Among other things, the state court determined that Trizec had not terminated the lease when it took back the basement storage space debtor had leased and used a portion of it to build an egress corridor. The court further determined that Trizec had not terminated the lease when it gutted the entire twentieth floor and re-configured it to suit the needs of a new tenant.

In the accompanying order, the state court judge awarded Trizec damages in the amount of $2,961,575.96 plus counsel fees to be determined at a later time. This amount consisted of: (1) unpaid rent in the amount of $1,637,117.30 for the twentieth and twenty-first floors floor for the period from February 1, 2000 through April 30, 2005; (2) unpaid rent for a basement storage area other than the one mentioned previously; and (3) debtor's share of the cost of rebuilding and re-letting the twentieth floor totaling $242,893.77. To this aggregate amount the state court added interest in the amount of $1,079,962.65.

The state court issued another order on June 27, 2005, in which it awarded Trizec counsel fees in the amount of $326,663.58 and additional interest in the amount of $35,908.21 for the period from May 1, 2005, through June 27, 2005. The amount of the verdict in favor of Trizec was increased from $2,961,575.96 to $3,324,107.55 and judgment in that amount was entered at that time.

Finally, the state court issued an order on May 30, 2006, wherein it reduced the

amount of interest included in the previous order by $50,069.96. It concluded for reasons that need not detain us that no interest should be awarded for the period from September 1, 2004, through December 20, 2004. The amount of the above judgment was accordingly reduced from $3,324,107.55 to $3,274,037.99. An amended judgment in that amount issued on June 27, 2006.

Debtor thereafter appealed the order of June 27, 2005, to the Superior Court of Pennsylvania. It did not, however, file a supersedeas bond to stay the effect of the above order pending resolution of the appeal.

After the Court of Common Pleas issued the above order and before the Superior Court had acted on the appeal, Trizec brought a motion in this court to reopen debtor's bankruptcy case so that Trizec could file an amended proof of claim in the amount of $3,274,037.79. The motion was granted on October 10, 2006.

Debtor objected to the amended proof of claim. Among other things, debtor asserted that the allowed amount of Trizec's amended proof of claim was subject to the "cap" on damages for termination of a lease found at § 502(b)(6). According to debtor, it had surrendered possession of the leasehold premises in October of 1999 or early in the year 2000.

Debtor's objection to Trizec's amended proof of claim has been heard and is now ready for resolution.

After debtor's objection to Trizec's proof of claim was heard by this court, the Superior Court of Pennsylvania decided debtor's appeal of the order of the Court of Common Pleas that was issued on June 27, 2005. *Trizechahn Gateway v. Titus*, 930 A.2d 524 (Pa.Super.2007). Among other things, the Superior Court vacated the portion of the lower court's order awarding Trizec counsel fees in the amount of $326,623.58. It also vacated the portion awarding Trizec interest and remanded for the limited purpose of recalculating interest. Insofar as the order pertained to debtor, the order of the Court of Common Pleas was affirmed in all other respects. 930 A.2d at 552–53.

## ANALYSIS

Debtor indicated at the hearing on its objection to Trizec's proof of claim that only two issues remain in dispute. They are: (1) the allowable amount of Trizec's claim in light of the cap on damages found at § 502(b)(6).; and (2) whether Trizec may collect post-petition interest on its claim.

Section 502 of the Bankruptcy Code provides in part as follows:

(a) A claim, . . . proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects.

(b) . . . [I]f such objection to a claim is made, the court . . . shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—. . . .

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year or 15 percent, not to exceed three years, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(6).

Congress enacted this provision to prevent a landlord with a claim for damages resulting from the breach of a lease for real property from reaping a windfall. S.Rep. No. 95–989 at 353 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6309. It is designed to compensate a landlord for its losses while preventing the allowed amount of the claim from being so large as to prevent other unsecured creditors from receiving any distribution from the bankruptcy estate. 4 Collier on Bankruptcy § 502.03[7][a] (15th ed.).

Subsection 502(b)(6) sets out a procedure for determining the allowed amount of the landlord's claim. The amount of the landlord's claim must be determined first. After that, how much of that amount is allowable must be determined. Subsection 502(b)(6) sets forth a cap on how much of that amount is allowable [2].

█ Prior to beginning the § 502(b)(6) calculation, a bankruptcy court must determine the precise date on which the landlord terminated the lease or the debtor surrendered the leasehold and then begin calculating from that date. *Solow v. PPI Enterprises (US), Inc. (In re PPI Enterprises (US), Inc.)*, 324 F.3d 197, 208 n. 18 (3d Cir.2003).

### On What Date Does The Calculation Begin?

According to debtor, § 502(b)(6)(A)(ii) applies here. Debtor maintains that the lease terminated on August 3, 2000, when Trizec accepted debtor's surrender of the basement storage space and repossessed it

for its own use. Alternatively, debtor maintains that Trizec accepted debtor's surrender of the leasehold on June 1, 2002, when Trizec began gutting the twentieth floor and rebuilding it to the specifications of the successor tenant who took over that space later on.

Trizec maintains that § 502(b)(6)(A)(i) rather than § 502(b)(6)(A)(ii) applies here. According to Trizec, the leasehold was neither repossessed by it nor surrendered by debtor on either of these dates. It claims that the lease terminated by operation of law immediately before debtor filed its bankruptcy petition on April 29, 2003.

█ State law, in this instance the law of Pennsylvania, determines what qualifies as repossession or surrender of a leasehold for purposes of § 502(b)(6)(A). *Fifth Avenue Jewelers, Inc. v. Great East Mall (In re Fifth Avenue Jewelers, Inc.)*, 203 B.R. 372, 378 (Bankr.W.D.Pa.1996).

It is not disputed that debtor abandoned the twentieth and twenty-first floors prior to August 3, 2000, and abandoned the basement storage space on that date. It also is not disputed that the last rent payment debtor made occurred on January 1, 2000, and was for that month alone. Debtor was current on its rent obligations to that date.

█ The tenant has the burden of showing, by clear and convincing evidence, that the actions of the landlord amounted to acceptance of the tenant's surrender of the property *Stonehedge Square LP v. Movie Merchants, Inc.*, 454 Pa.Super. 468, 475, 685 A.2d 1019, 1023 (1996), *aff'd*, 552 Pa. 412, 715 A.2d 1082(1998).

█ Mere abandonment of the leasehold by a tenant is not sufficient to qualify as

---

**2.** Debtor and Trizec appear to agree that we can dispense with the first of these steps and can proceed directly to the second step. We

need not determine the amount of Trizec's claim before determining how much of the it is allowable under § 502(b)(6)

surrender for purposes of landlord-tenant law; something more is required. *Id.* Surrender occurs in this context only if there is an express agreement by the landlord and the tenant to that effect or an unequivocal act on the part of the landlord which implies that it agreed to a surrender of the property by the tenant. *Ralph v. Deiley,* 293 Pa. 90, 94, 141 A. 640, 642 (1928).

◼ The matter does not end there. The tenant must also demonstrate that the landlord's resumption of possession was not merely for the purpose of protecting the property in the tenant's absence. The tenant also must demonstrate that the landlord's repossession of the property was adverse to its re-occupation by the tenant and to a resumption of their landlord-tenant relationship. *Kahn v. Bancamerica–Blair* Corp., 327 Pa. 209, 213–14, 193 A. 905, 907 (1937).

◼ Failure on the part of the landlord to protest or to inform the tenant that its abandonment of the property is not accepted does not relieve the tenant of liability. *Ralph,* 293 Pa. at 94, 141 A. at 642. The onus does not lie with the landlord in this regard.

◼ As it does in this proceeding, debtor maintained in the proceeding in the Court of Common Pleas that Trizec's taking back of the basement storage space after debtor had abandoned it on August 3, 2000, amounted to repossession of the leasehold by Trizec which relieved debtor of any further liability under the lease. The Court of Common Pleas categorically rejected this contention in its memorandum opinion dated March 30, 2005. There was no credible evidence, it concluded, that Trizec's action with respect to this space amounted to a re-taking[3] of the basement storage space which served to relieve debtor of further liability under the lease after August 3, 2000 (Memorandum Opinion, pp. 14–15).

The Court of Common Pleas also rejected debtor's assertion, which debtor has resurrected in this proceeding, that Trizec's gutting of the twentieth floor starting on June 1, 2002, to re-configure it for a new tenant constituted a "re-taking" of the leasehold and served to relieve debtor of further liability under the lease. Trizec's demolition of the twentieth floor, the Court of Common Pleas concluded, was not adverse to debtor's reoccupation of the twentieth floor and to a resumption of its tenant-landlord relationship with Trizec. It so concluded because debtor was in the process of dissolving by then and its partners had gone their separate ways. (Memorandum Opinion, p. 16).

Debtor will not be heard to raise these issues in this proceeding, hoping that this court will find in its favor. In effect, debtor seeks to have this court reverse the decision of the Court of Common Pleas (as well as the Superior Court of Pennsylvania). Even if we were convinced that the Court of Common Pleas decided these issues incorrectly, which we are not, we could not do so. Debtor is collaterally estopped from raising the same issues in this proceeding.

◼ A federal court must accord determinations made by a state court the "same full faith and credit as they have by law or usage in the courts of such State ... from which they are taken". 28 U.S.C. § 1738. Moreover, it must defer to and apply the law of issue preclusion of the state in which the judgment was rendered. *Mar-*

---

**3.** We understand the term "re-taking" in this context to be interchangeable with the term "repossession".

*rese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985).

■ Issue preclusion applies under Pennsylvania law when: (1) the issue decided in the state court proceeding is identical to the issue in a later proceeding; (2) there was a final judgment on the merits; (3) the party against whom issue preclusion is invoked was a party to or is in privity with a party to the previous proceeding; and (4) that party had a full and fair opportunity to litigate the issue in the previous proceeding. *Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 357–58 (3d Cir. 1999).

■ As the party asserting that issue preclusion here, Trizec has the burden of establishing that all of these requirements are satisfied. *Suppan v. Dadonna,* 203 F.3d 228, 233 (3d Cir.2000).

Each of these requirements is satisfied in this instance. The issues debtor now raises in this proceeding are identical to issues it raised, without success, in the Court of Common Pleas. The Court of Common Pleas relied, at least in part, on its findings concerning these issues, in issuing a final judgment in the civil action Trizec had commenced. Its findings concerning these specific issues were left undisturbed by the Superior Court. As it is in the present proceeding, debtor was a party to the civil action tried by the Court of Common Pleas wherein it had a full and fair opportunity to litigate these issues.

It follows that debtor is precluded from asserting in this bankruptcy proceeding that the lease it had with Trizec terminated on August 3, 2000, or on June 1, 2002.[4]

■ The Court of Common Pleas determined that the above lease remained in effect until its term expired on June 30, 2005. It did not have to consider whether, *for bankruptcy purposes,* it was deemed to have terminated as a matter of law at a time prior to June 30, 2005. The Court of Common Pleas was not confronted, as is this court, with determining the starting date for calculating the cap on Trizec's claim found at § 502(b)(6).

If the starting date for calculating the cap on Trizec's claim for damages is not August 3, 2000, or June 1, 2002, what is?

Aside from August 3, 2000, and June 1, 2002, debtor offered no other date prior to April 29, 2003, when debtor filed its bankruptcy petition, as the starting point for calculating the cap on the allowed amount of Trizec's claim. Debtor implicitly conceded in its post-hearing brief that if the starting date is neither of these dates, it is April 29, 2003.

We conclude that § 502(b)(6)(A)(i) rather than § 502(b)(6)(A)(ii) applies here and will determine the amount of the cap on the allowed amount of Trizec's claim using April 29, 2003, as the basis for our calculation.

■ If a trustee (or a chapter 11 debtor) does not assume or reject an unexpired lease of real property of which the debtor is the lessee by the earlier of 120 days after entry of the order for relief or of an order confirming a plan of reorganization, the lease is deemed to be rejected and the trustee (or chapter 11 debtor) must immediately surrender the property to the lessor. 11 U.S.C. § 365(d)(4)(A).

---

4. If we had to decide these issues for ourselves, we would decide them as the Court of Common Pleas did. We would reject debtor's assertion that Trizec accepted debtor's surrender of the leasehold on August 3, 2000, when debtor removed its files from the basement storage space, or on June 1., 2002, when Trizec began gutting the twentieth floor to make it suitable for a new tenant.

The earlier of these dates occurred 120 days after entry of the order for relief. Debtor's plan of reorganization was not confirmed until 177 days after entry of the order of relief.

Such rejection constitutes a breach of the lease. Because debtor neither assumed the above lease under § 365 of the Bankruptcy Code nor in its plan of reorganization, debtor's breach of the lease is deemed as a matter of law to have occurred immediately before debtor filed its bankruptcy petition on April 29, 2003. 11 U.S.C. § 365(g)(1).

What remains to be determined now that the starting date for calculating the cap on Trizec's damages has been determined is the allowed amount of Trizec's claim in light of the cap on damages imposed by § 502(b)(6)

Subsection 502(b)(6)(A) deals with the allowed amount of Trizec's claim for the specified period following the filing of the bankruptcy. Subsection 502(b)(6)(B), on the other hand, deals with the allowed amount of Trizec's claim for the period preceding the bankruptcy filing. We will proceed chronologically here and first will determine the allowed amount of Trizec's claim for pre-petition damages and then will determine the same for its post-petition damages.

### § 502(b)(6)(B) Unpaid Pre-petition Rent

Debtor paid no rent for the twentieth and twenty-first floors from February of 2000 through April of 2003, a period of thirty-nine months. The last rent payment by debtor was made in January of 2000 and was for that specific month. Un-til then, debtor was current on its rent and other obligations arising under the lease.

Debtor and Trizec agree that the base rent due under the lease for these floors during this period was $33,744.00 per month.[5]

Using this monthly amount, we calculate that unpaid rent due under the lease for this period totals $1,316,016.00 ($33,744.00 × 39 = $1,316,016.00).

### Pre-petition Taxes and Operating Costs

Trizec seeks to recover as additional rent debtor's share of taxes and operating costs for thirty-nine months prior to the petition date. According to Trizec, these expenses total $97,123.18, or $2,490.34 per month ($97,123.18 ÷ 39 = $2,490.34).

Debtor does not dispute that it owes its share of taxes and operating costs; it does, however, dispute the monthly amount Trizec claims was due. According to debtor, its share of these expenses amounted to $1,711.00 per month during the thirty-nine months preceding the filing of its bankruptcy petition.

■■■ Trizec, which has the burden of proof on this matter, offered nothing to support its claim as to the amount of taxes and operating costs due during this period. We therefore will calculate the total amount of debtor's share of these expenses at the rate of $1,711.00 per month as debtor proposes.

Using this monthly amount, we calculate that debtor owes additional rent in the amount of $66,729.00 for the thirty-nine-month period prior to the commencement of debtor's bankruptcy case on April 29, 2003 ($1,711.00 × 39 = $66,729.00).

---

**5.** In its calculation of the rent due under the lease for this thirty-nine month period, Trizec did not include unpaid rent due under the lease from February of 2000 through July of 2000 for the basement storage space. Fol-lowing Trizec's lead, we will not include unpaid rent for the basement storage space in calculating the allowed amount of its claim as of the petition date.

## Legal Fees

Paragraph 15(g) of the lease provided that debtor was obligated to pay reasonable legal fees in the event Trizec took legal action to enforce debtor's obligations under the lease.

 Relying on this provision, Trizec maintains that it incurred legal fees in the amount of $101,176.50 in enforcing debtor's obligations under the lease and asserts that this amount should be included in the total amount that was due under the lease prior to the petition date.

The Court of Common Pleas concluded that Trizec was entitled to legal fees in the amount of $326,823.58 through April 30, 2005. Later on it concluded that Trizec was entitled to additional legal fees in the amount of $35,908.21 for the period beginning on May 1, 2005, and ending on June 27, 2005.

The Superior Court concluded that paragraph 15(g) was ambiguous and held that the Court of Common Pleas erred as a matter of law in awarding legal fees to Trizec The portion of the lower court's order awarding these fees was vacated. *Trizechahn,* 930 A.2d at 544–46. Trizec is collaterally estopped from claiming in this proceeding that debtor owes it these legal fees.

We would deny Trizec's claim for legal fees in this proceeding even if the Superior Court had not so held for the simple reason that Trizec produced no evidence in this proceeding indicating the amount of legal fees it incurred. Absent such evidence, we would have to conclude that

Trizec is not entitled to legal fees in any amount.

## Pre-petition Interest

Paragraph 1(a) of the lease agreement provided as follows:

> Interest at the per annum rate of twelve percent (12%) will be charged retroactive to the first day of the month for rents not paid by the tenth (10th) of the calendar month.

Relying on this provision, the Court of Common Pleas awarded Trizec interest on unpaid rent in the amount of $1,017,222.20 for the period beginning on February 1, 2000, and ending on June 27, 2005.

The Superior Court noted in deciding debtor's appeal that the lease did not have an acceleration clause entitling Trizec to call the entire balance of rent due under the lease in the event it declared a default. It then concluded that the lower court had erred as a matter of law in calculating the amount of interest owed on an accelerated basis as of February 1, 2000. The question of how much interest was owed was remanded to the lower court with the instruction to re-calculate the amount in accordance with the provisions of the lease. *Trizechahn,* 930 A.2d at 543–44. The Court of Common Pleas to date has not done so.

Because the question of interest owed is before this court now, we will have to determine for ourselves the amount of interest to which Trizec is entitled for the period commencing on February 1, 2000, and ending on April 29, 2003.[6]

Debtor concedes that Trizec is entitled to pre-petition interest for purposes of

---

**6.** We would have to determine the amount of pre-petition interest to which Trizec is entitled for purposes of § 502(b)(6)(B) even if the Superior Court had upheld the decision of the lower court as to the amount of interest debtor owed. The lower court determined the amount of interest to which Trizec was entitled for the period beginning on February 1, 2000, and ending on June 27, 2005. The issue now before this court concerns the amount of interest to which Trizec is entitled for the period beginning on February 1, 2000, and ending on April 29, 2003.

§ 502(b)(6)(B) pursuant to the rate set forth in paragraph 1(a) of the lease agreement. It has not, however, offered an opinion as to what that amount might be.

Trizec has submitted an exhibit in which it has calculated the amount of pre-petition interest debtor owes. According to Trizec's calculation, interest at the rate of twelve percent per annum owed on unpaid rent from February 1, 2000, through April 29, 2003, in the amount of $33,744.00 per month totals $263,203.20. We are satisfied that Trizec has correctly calculated the amount of interest to which it is entitled for this period. It will be included among the damages to which Trizec is entitled under § 502(b)(6)(B).

To summarize what we have determined to this point, we conclude that Trizec may recover the following in accordance with § 502(b)(6)(B): (1) unpaid pre-petition rent in the amount of $1,316,016.00; (2) unpaid pre-petition taxes and operating costs in the amount of $66,729.00; and (3) pre-petition interest in the amount of $263,203.20. Trizec is not entitled to recover any legal fees it incurred during this period. Together these amounts total $1,645,948.20 ($1,316,016.00 + $66,729.00 + $263,203.20 = $1,645,948.20).

### § 502(b)(6)(A) Post-petition Rent

Under § 502(b)(6)(A), Trizec is entitled to unpaid post-petition rent, without acceleration, for the greater of one year or fifteen percent, not to exceed three years, of the remaining term of the lease following the petition date.

The lease agreement would have expired by its own terms on June 30, 2005, some twenty-six months after debtor filed its bankruptcy petition. One year (twelve months) of the remaining term of the lease is greater than fifteen percent of the remaining term, which equals 3.9 months (26 × .15 ÷ 3.9).

Trizec maintains that it is entitled to unpaid post-petition rent for the twentieth and twenty-first floors in the amount of $404,928.00. Debtor, it should be noted, does not contest this amount.

We agree with Trizec on this point. We previously determined that the rent due for these two floors came to $33,744.00 per month. The amount of post-petition rent to which Trizec is entitled under § 502(b)(6)(A)(i) is $404,928.00 ($33,744.00 × 12 = $404,928.00).

### Post-petition Taxes and Operating Costs

Trizec seeks to recover as additional rent debtor's share of taxes and operating costs that Trizec incurred during the first year following debtor's filing of its bankruptcy petition. According to Trizec, these costs total $56,650.23, or $4,720.85 per month ($56,650.23 ÷ 12 = $4,720.85).

As was the case with the purported amount for taxes and operating costs Trizec claimed debtor owed during the pre-petition period ($97,123.18 or $2,940.34 per month), Trizec produced nothing supporting its assertion that debtor owed $56,650.23 (or $4,720.85 per month) in post-petition taxes and operating costs for the year following the petition date. Debtor concedes that Trizec may recover such post-petition expenses but maintains that the monthly amount it owes totals $1,711.00.

Lacking any hard information concerning the monthly amount of these post-petition expenses, we will utilize the monthly amount debtor concedes it owes. It follows that, for purposes of § 502(b)(6)(A)(i), debtor's share of post-petition taxes and operating costs that Trizec is entitled to recover totals $20,532.00 ($1,711.00 × 12 = $20,532,00).

### Post-petition Interest

■ Trizec requests post-petition interest in the amount of $1,097,157.18. It seeks to recover interest not only on unpaid rent due for the twelve-month-period following the petition date, but also on unpaid *pre*-petition rent that continues to accrue after debtor filed its bankruptcy petition. In effect, Trizec maintains that "the meter continues to run" with respect to unpaid pre-petition rent.

Debtor objects to Trizec's request for post-petition interest. Such interest, debtor maintains, constitutes unmatured interest and is not permitted by § 502(b)(2) of the Bankruptcy Code, which provides as follows:

> (b) ... [I]f such objection to a claim is made, the court ... shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—....
>
> (2) such claim is for unmatured interest.

11 U.S.C. § 502(b)(2).

Aside from making this conclusory statement, debtor has presented nothing to establish that this provision applies in light of the facts presented in this case. Debtor has left the court to fend for itself in determining whether § 502(b)(2) is dispositive here.

Prior to enactment of the Bankruptcy Code, it was the general practice that interest on a debt stopped accruing once a bankruptcy case commenced. *Sexton v. Dreyfus*, 219 U.S. 339, 344, 31 S.Ct. 256, 259, 55 L.Ed. 244 (1911). The practice traced its ancestry to a centuries-old practice of English bankruptcy courts. *Id.*

This was not, however, an iron-clad rule; it was subject to exception in certain instances.

For instance, post-petition interest was allowable when the debtor proved to be solvent. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 246, 109 S.Ct. 1026, 1033, 103 L.Ed.2d 290 (1989). When a bankruptcy estate had sufficient assets to pay all creditors in full and to pay post-petition interest, equitable considerations came to the fore and dictated that interest be paid to any oversecured creditor before any of the assets were returned to the debtor. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 164–65, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946). The "touchstone" at work in such cases was the striking of a balance of the equities between creditor and creditor and between creditors and the debtor. *Id.*

Interest did not stop accruing when it did because the debt somehow had lost its interest-bearing quality as a result of the bankruptcy; it instead was due to the possibility that the bankruptcy estate might not have sufficient assets to pay all creditors in full. *American Iron & Steel Manufacturing Co. v. Seaboard Air Line Railway*, 233 U.S. 261, 266, 34 S.Ct. 502, 504, 58 L.Ed. 949 (1914). If estate assets were not sufficient to pay claims "of equal dignity" in full, distribution was made only on the principal of a debt. If, on the other hand, estate assets were sufficient to pay all debts in full, interest was to be paid in addition to principal. *Id.*

This pre-Code prohibition against paying post-petition was codified at § 502(b)(2). Pre–Code exceptions to the prohibition, however, also apply to § 502(b)(2).

■ Subsection 502(b)(2) has a two-fold purpose; (1) to avoid unfairness among competing creditors; and (2) to avoid administrative inconvenience. *National Energy & Gas Transmission, Inc. v. Liberty Electric Power*, 492 F.3d 297, 301 (4th Cir.2007)(citing *Bruning v. U.S.*,

376 U.S. 358, 362, 84 S.Ct. 906, 908–09, 11 L.Ed.2d 772 (1964)).

Subsection 502(b)(2) was enacted to guide in the administration of a bankruptcy estate "to bring about a ratable distribution of assets among the bankrupt's creditors". *Id.* (citing *Vanston Bondholders,* 329 U.S. at 161, 67 S.Ct. at 239). See also *Hanna v. U.S. (In re Hanna),* 872 F.2d 829, 830 (8th Cir.1989).

As a rule of administrative convenience, § 502(b)(2) makes it possible to easily calculate the amount of claims; it also assures that creditors on the "bottom rungs" are not prejudiced by delays in distribution of the bankruptcy estate assets. *In re Hanna,* 872 F.2d at 830. But post-petition interest may be allowed when these concerns are not present. *Id.* See also *In re National Energy & Gas Transmission,* 492 F.3d at 303.

The circumstances presented in this case lead to the conclusion that Trizec's claim for post-petition interest should be disallowed. Subsection 502(b)(2), not its exceptions, applies to this portion of Trizec's proof of claim.

Debtor's confirmed plan of reorganization provided that Trizec, which has a general unsecured claim, as well as all other creditors having general unsecured claims, were unimpaired and were to receive payment in full of the allowed amount of their claims.

How this was to be accomplished was explained in debtor's disclosure statement, which provided that the plan would be funded from an interest-bearing certificate of deposit debtor had [7] and from the proceeds of other property of the bankruptcy estate. If these were not sufficient to pay all allowed claims in full, the deficiency was to be funded by cash contributions from debtor's general partners to the extent of their personal liability under non-bankruptcy law. After all allowed claims were paid in full, any estate assets remaining were to be transferred to debtor's general partners or placed in a trust for their benefit.

This provision concerning possible contributions from debtor's general partners was echoed in debtor's confirmed plan of reorganization.

A fair interpretation of the above language in debtor's disclosure statement would suggest that debtor would be able to pay Trizec post-petition interest on its claim.

Assuming that debtor has this capacity, it follows that paying post-petition interest on Trizec's proof of claim *without doing the same with respect to the allowed claims of other general unsecured creditors* would be *unfair* to these other creditors.

Although Trizec is the sole member of its class according to debtor's plan of reorganization, the type of claim it has is no different than the claims of other creditors having allowed general unsecured claims. Trizec is similarly situated with respect to the others but occupies a class all by itself.

One way in which Trizec's claim differs from the others is in the percentage of the amount of its allowed general unsecured claim in comparison to the percentage of the amount of all other allowed general unsecured claims. The amount of Trizec's claim comprises 99.23% of all such claims while the amount of all other such claims comprises only .73%. This disparity does not, however, affect the outcome here.

---

7. The amount of the certificate of deposit was not indicated in the disclosure statement. As a consequence, it is not known whether the certificate of deposit sufficed to pay in full all creditors having allowed claims.

As was noted previously, one of the purposes of § 502(b)(2) is avoiding unfairness in the treatment of competing creditors. *In re Energy & Gas Transmission*, 492 F.3d at 301. It would be intrinsically unfair to other creditors having allowed general unsecured claims if Trizec were paid interest on its allowed general unsecured claim merely because of the percentage of its claim relative to the total of all allowed general unsecured claims.

The relative size of Trizec claim, in other words, is not relevant. Treating Trizec differently than all other creditors having allowed general unsecured claims would be inequitable. Equity, we believe, would not condone such disparate treatment of creditors having allowed general unsecured claims. The portion of Trizec's claim for post-petition interest therefore must be denied.

To summarize what we have concluded in this memorandum opinion, Trizec is entitled under § 502(b)(6)(A) to recover $404,928.00 for unpaid post-petition rent and $20,532.00 for unpaid post-petition taxes and operating costs. It is not entitled to any post-petition interest. Taken together, these amounts total $404,928.00 + $20,532.00 + $0.00 = $425,460.00. Adding this amount to the amount to which Trizec is entitled according to § 502(b)(6)(B)—i.e., $1,645,909.20-, it follows that the allowed amount of Trizec's claim under § 502(b)(6) totals $2,071,369.20 ($1,645,909.20 + $425,460.00 = $2,071,369.20).

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** this *21st* day of *September,* 2007, for reasons set forth in the above memorandum opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that the claim of TrizecHahn Gateway be and hereby is **ALLOWED** in the amount of $2,071,369.20.

It is **SO ORDERED.**